COMMERCIAL CREDIT CORPORATION *v.* SMITH

No. 40494          September 23, 1957          96 So. 2d 911

*Hardy Lott,* Greenwood; *George P. Cossar,* Charleston, for appellant.

*Breland & Whitten,* Sumner, for appellee.

ROBERDS, P. J.

Smith, the appellee, brought this suit against Commercial Credit Corporation, the appellant, for property and personal-injury damage in the total sum of $2,800, claimed by Smith to have resulted to him from the negligence of the Credit Corporation. Smith was awarded a verdict and judgment for $1,325, from which the Credit Corporation appeals.

The Credit Corporation, on this appeal, contends that, under the proof, it was guilty of no negligence, and its requested peremptory instruction should have been granted; but that if negligence did exist it did not contribute to the injuries constituting the basis of the suit. It says that Smith was entirely responsible for his own injuries. The Credit Corporation also urges that certain instructions granted Smith were erroneous, requiring a reversal and remand of the case if the first two contentions are not well-taken.

The following facts, bearing upon the question of negligence, are either uncontradicted or, if disputed, the

jury was justified in deducing them from the disputed evidence.

In August, 1954, the Credit Corporation sent C. L. Bobbitt, its agent and servant, to Tallahatchie County, Mississippi, to repossess a Chrysler automobile and bring the same to Memphis, Tennessee. Bobbitt did repossess the car and proceeded to "tow" it toward Memphis. He was traveling Highway 35 in said county. This was a graveled road. A few miles north of Charleston, Mississippi, he came to a point where a bridge had been removed over this road preparatory to the construction of a new bridge. He reached this point about ten o'clock at night. The road, at this point, runs generally north and south. To enable travel of the road a bypass had been constructed to go around the open ditch left by removal of the bridge. This bypass was on the west side of the road. It left the main road just south of the opening, went to the west and thence north around the removed bridge opening, and thence east back upon the roadway north of the bridge opening. A bulldozer dirt-removing machine had been parked in the middle of the road just to the south of the bridge opening to prevent northbound travel running into the opening left by removal of the bridge. The same thing had been done on the north side of the bridge opening to protect southbound motorists, but that fact has little, if any, bearing on the merits of this case.

Bobbitt, towing the Chrysler car, undertook to travel this bypass north. The towed car stalled in the bypass. Fortunately for him, persons shortly came by who knew how to start and operate the bulldozer. The Chrysler was unhitched from the automobile in which Bobbitt was riding. The south bulldozer was started and was used to pull the Chrysler back out of the bypass upon the highway to the south. The bulldozer was replaced as a barricade. Bobbitt, using the car in which he was riding, which we will call the Bobbitt car, drove north out of the bypass,

turned around and came back through it to the south, drove around the Chrysler, and stopped just south of the back of the Chrysler for the purpose of again attaching the Chrysler to the Bobbitt car, preparatory to proceeding another way to Memphis with the towed Chrysler.

This was the setting at that time: It was ten o'clock at night. The road was blocked but passage into the bridge opening was protected by the parked bulldozer. The bypass left the main road to the left near (but it is not shown just how far) from the parked bulldozer. The Chrysler and Bobbitt's car were parked on the west, whether on or off the traveled portion of the highway being a question for the jury. Some of the witnesses say the back end of the Chrysler, which was attached to the back end of the Bobbitt car, was upon the traveled portion of the highway. Some witnesses say the Bobbitt car covered at least one-third of the traveled portion of the road. There was a mailbox near, on the west side of the traveled part of the road. The front end of the Bobbitt car was pulled to the left, or east, of that box. The lights on the Bobbitt car were burning—some witnesses said they were shining very brightly; Bobbitt said they were dim. It was facing south. The road right of way opposite the Chrysler and Bobbitt's car was some 22.6 feet wide and the traveled part of it was sixteen feet. Across to the east of the road was an embankment, at the bottom of which was a small ditch. Near this ditch, perhaps between it and the road, was a large metal culvert—some three to four feet in diameter and twenty-five to thirty feet long. This lay on the ground parallel to the highway, so that one approaching from the south would see only the south end thereof. There was a hill to the south of the bridge opening, the brow or upgrade of the road being some one hundred and twenty-five yards from the bridge opening. Smith, in his GMC dual-wheel truck, came over the hill from the south, ran into the culvert and thence against the parked bulldozer, resulting in damage to the

truck and to himself personally. He says that Bobbitt, as the agent of the Credit Corporation, was responsible for the accident, in these respects: That he knew of this congested traffic situation, and that he had his cars parked on the traveled portion of the highway; that he had the lights on the Bobbitt car shining brightly, thereby blinding, or greatly impairing the visibility, of one approaching from the south, and that the Chrysler car was so parked that there was not room between it, the culvert and bulldozer, for the truck to pass.

And, as bearing upon whether Bobbitt was guilty of negligence, it might be stated that Smith testified that Bobbitt, immediately after the accident happened, said to Smith ''I know you are going to fault me for having the road blocked.'' Also, Nolan Johnson, who lived right near the road and whom Bobbitt had awakened and asked to come and help him before the bulldozer pulled the Chrysler out of the bypass, testified that there was not room for Smith to drive the truck between the Bobbitt parked cars and the culvert; that Smith had to hit either the parked cars or the culvert. Smith also testified to that. It is also in evidence that Bobbitt had requested Johnson to use a flashlight and flag anyone approaching from the south, showing, as Smith contends, that Bobbitt knew it was dangerous for a vehicle to approach from the south. There is no proof that Johnson did flag anyone with the flashlight. And, again, it is in evidence that Bobbitt, when he saw the Smith automobile approaching, hurriedly undertook to get into his car, and start it, for the purpose of removing it from the traveled part of the highway, but the car would not start. Also, Johnson testified that right after the accident Bobbitt said to Smith ''Robert, I know you think hard of me for my car setting up there in the road like that.'' It is very pertinent to note that Bobbitt knew the location of the culvert, the bulldozer, the bypass, and, of course, of his two automobiles. In other words, he was

aware of all of the physical facts when he parked his automobiles. All of this, according to Smith's contention, proved that Bobbitt knew he had created a dangerous and hazardous situation for motorists approaching this scene from the south.

■■ ■ We think this situation presented to the jury the questions, whether the acts of Bobbitt constituted negligence and, if so, whether this negligence contributed to the injury of Smith. In weighing the question whether we shall reverse the jury on the findings of fact, it should be noted that on the trial of the case witnesses used before the jury miniature vehicles and objects to picture the setting and location of the respective objects as they existed at the scene of the accident. We have not had the aid of this method of proof, and, as to it, are not in position to evaluate the weight of that evidence. Hamilton v. McCry, 229 Miss. 481, 92 So. 2d 564. The facts of this case are different from those in Mississippi City Lines, Inc. v. Bullock, 194 Miss. 630, 13 So. 2d 34, and other cases relied upon by the Credit Corporation dealing with the foregoing questions. But the Credit Corporation says that even though it might have been negligent, yet Smith's testimony shows that his own negligence was the sole cause of the accident. Smith testified that when he came over the brow of the hill, the lights from the Bobbitt car were shining brightly. One time he said the lights blinded him, another that they almost blinded him, and again they partly blinded him, yet he did not stop but proceeded down the hill. When he came over the brow of the hill he was running about thirty-five miles per hour. He says he reduced his speed to twenty to twenty-five miles per hour. He knew the bridge was out and that there was a bypass but did not know of the existence and location of the bulldozer and the culvert, nor could he tell whether the Bobbitt car was moving or standing still. Able counsel for the Credit Corporation pressed him hard as to why he did not stop still when the

car lights blinded, or partly blinded, him. Smith said "Well, I figured that I could cut my speed down and then come down closer to see what it was. So I cut my speed down and I almost stopped. And I see that I was going to hit the car if I kept on that way, so then I went over to the other side and hit the bank there, and then I slipped into the bank and hit the culvert laying along there." Again, when asked why he didn't stop, he said he either had to hit the parked car or the culvert. Again "Well, it was either to hit the car head-on, and I couldn't do anything after that because that culvert knocked plum loose there." He said "I could have stopped all right with my brakes as good as they were, but I figured I could come on down a little slower and I wouldn't hit anything." We are of the opinion that the contention of the Credit Corporation here made is not well-taken.

In the first place, it is not certain as to the extent of the blindness produced by the Bobbitt car lights. As stated, Smith said one time he was blinded, another that he was "almost" blinded, and another that he was partly blinded. Again, whether it is the duty of a motorist to stop, or slow down, in an emergency of this kind, depends upon the facts and circumstances of the particular case. Planters Wholesale Grocery Company v. Kincade, 210 Miss. 712, 50 So. 2d 578. The duty of Smith and whether he acted as a prudent man under this confused situation were questions properly presented to the jury under carefully drawn instructions, correctly announcing the principles of law applicable to the situation. And, lastly, whether Smith, by his conduct, contributed to his own injury, and if so, the effect thereof were questions properly for the jury under the circumstances of this case. Mock v. Natchez Garden Club, 230 Miss. 377, 92 So. 2d 562. The facts here are quite different from those involved in the cases cited by the Credit Corporation, which we deem unnecessary to analyze.

Complaint is made by the Credit Corporation of five instructions granted Smith. The instructions of both parties to this litigation were unusually well-prepared, correctly announcing the law applicable to the evidence disclosed by the record, and we deem it needful to mention only one of them in detail. Smith obtained an instruction detailing the elements of damage the jury might consider if it found for him and then recited ''but not to exceed the amount sued for by plaintiff.'' The Credit Corporation says the quoted part of this instruction was condemned in the cases of G. & M. Coast Traction Company v. Keebler, 130 Miss. 631, 94 So. 795; St. Louis-San Francisco R. Company v. Dyson, 207 Miss. 639, 43 So. 2d 95, and Graves v. Johnson, 179 Miss. 465, 176 So. 256. These cases did caution against the granting of this instruction where the amount of the verdict is excessive, but in the case at bar no question is raised as to the amount of the verdict.

Affirmed.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.