Ronald John KOPERA, and wife, Sandra
Kopera, Plaintiffs,

v.

Charles MOSCHELLA et al., Defendants.

Civ. A. No. 73S–163(N).

United States District Court,
S. D. Mississippi, S. D.

July 31, 1975.

Bobby G. O'Barr, Clyde Hurlbert, Biloxi, Miss., for plaintiffs.

George E. Morse, Gulfport, Miss., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NIXON, District Judge.

This diversity suit was filed by the Plaintiffs, Ronald John Kopera and Sandra Kopera against the defendants under Mississippi's wrongful death statute, Miss.Code 1972, § 11–7–13, for damages or compensation for the alleged wrongful death of their minor daughter, Ronette N. Kopera, as a result of her January 20, 1973 drowning in the swimming pool at the Oakwood Apartments, owned, operated and maintained by the defendants in Biloxi, Harrison County, Mississippi. This case was tried to the Court without a jury on May 5, 1975, and based upon all of the evidence adduced, this Court makes the following Findings of Fact and reaches the following Conclusions of Law as required by Rule 52, F.R.Civ.P.

## FINDINGS OF FACT

On January 20, 1973, the deceased six year old minor's body was found at the bottom of a swimming pool located at Oakwood Apartments, 2870 West Beach Boulevard, Biloxi, Mississippi where she resided as a tenant in Apartment 169 with her mother Sandra Kopera, who paid rent for the occupancy of the apartment and the use of the swimming pool, laundry room and recreation facilities located in the apartment complex. This apartment complex which was located on the North side of U. S. Highway 90 facing the Mississippi Sound or Gulf of Mexico, consisted of two hundred sixty-four (264) units with five swimming pools, one located in the middle of every other complex. The complex consisted of town houses on the north and south ends with two story structures on the east and west side containing regular apartments. The complex in which the deceased and her mother resided had a rectangular shaped swimming pool located in the middle thereof which was approximately forty feet in length running east and west and was approximately three feet deep on the shallow end and seven feet deep on the deep end.

Mrs. Kopera and Ronette had originally moved to the Oakwood Apartments in approximately October, 1972 and temporarily resided in the apartment of some friends, Dick and Linda Mohr. Shortly thereafter, in November, 1972, she applied to rent her own apartment at Oakwood and signed a written application (Exhibit D–1) therefor on which she stated that she was a single person and did not list any dependants. However, in her conversation with the assistant manager of Oakwood, Theresa Leopold, to whom she applied, she informed Mrs. Leopold that she was divorced from Ronald Kopera and made her aware of the fact that she had a five year old daughter who would reside with her in the apartment. Although a lease was prepared for Mrs. Kopera's signature, she never signed it but began renting apartment No. 169 at Oakwood in November, 1972, and continued to do so, paying rent therefor to the defendants up to the time that Ronette drowned. On several occasions while she was residing at Oakwood, Mrs. Kopera conversed with Mrs. Leopold at which time Ronette was with the plaintiff. Thus, the defendants, through their assistant manager, Mrs. Leopold, knew that Ronette resided with her mother at Oakwood Apartments. Ronette was born December 21, 1966, was in good health and a six year old child of average intelligence.

On January 20, 1973, the date that she died by drowning, Ronette Kopera resided with her mother at Apartment 169 of Oakwood Apartments, which was a one bedroom upstairs apartment. Ronette's grandmother and Mrs. Kopera's mother, Mrs. Emily Kamysz, who had been visiting with her daughter and granddaughter for approximately one month at the time of Ronette's death, took the child to an apartment occupied by Linda Mohr, Sandra's friend, who lived in the same complex. Mrs. Kamysz and Ronette left their apartment at approximately 5:30 or 5:45 p. m., during daylight hours, in order to take some Polish pastry which Mrs. Kamysz had made to Linda Mohr on her birthday. After they left, Sandra Kopera proceeded to shower, preparing to go to work as a barmaid at the White Pillars Restaurant located next to Oakwood Apartments. After Mrs. Kamysz and Ronette were at the Mohr's for approximately fifteen minutes, Ronette became anxious to leave and left approximately five minutes ahead of Mrs. Kamysz in order to return to their apartment. While Mrs. Kopera was in the shower, Ronette entered the apartment and called to her mother who was in the shower. Sandra replied asking Ronette where grandmother was, to which she responded, "She's coming, Mommy" and closed the door, leaving the apartment, although Mrs. Kopera thought she had remained therein. Approximately five or ten minutes later Mrs. Kamysz entered the apartment and inquired of Sandra Kopera concerning Ronette, to which she responded that she thought she was with her. Mrs. Kamysz then looked out the door and noticed that there was a commotion around the swimming pool. After she alerted Sandra Kopera she left the apartment, saw that Ronette's body had been removed from the pool by another tenant who dived therein after being told by another couple who were tenants in the apartment that they had just observed Ronette's body at the bottom of the deep part of the pool near the drain. She screamed and Mrs. Kopera ran down to the pool area.

Although two nurses who lived in the apartment complex attempted to administer resuscitation to the minor plaintiff, she was never revived and died as a result of drowning.

At the time that Ronette drowned, the pool was full of water. Mrs. Kopera had taken Ronette swimming in the pool on a couple of occasions in October, 1972 and other tenants had swum therein in November of that same year. The pool area contained no life-saving or resuscitating equipment for the recovery of bodies, such as poles or hooks. Neither was it fenced nor covered nor drained in the winter months, and at no time was a lifeguard employed by the defendants to attend the pools in the apartment complex despite the fact that the defendants' management had knowledge that Ronette Kopera, and other children of tender years lived in the apartment complex, swam in the pools, including the pool in question, played in and near the pool area, some having been chased off by Mrs. Leopold, the assistant manager, prior to the time that Ronette drowned.

After Ronette's body was discovered, she was not removed from the pool until another tenant, who had been informed by the tenants who had observed the child's body returned to his apartment, undressed, put on a bathing suit and dived into the pool, removing the body therefrom. No one witnessed or knows how or why Ronette entered or fell into the pool, but when recovered she was fully dressed, wearing a sweater, slacks and gray tie-on canvas shoes. She had never been allowed to enter the pool or go into the pool area by Mrs. Kopera or Mrs. Kamysz without being accompanied by Mrs. Kopera or another adult and apparently had never done so before without accompaniment. She was unable to swim. The body was seen by the tenants who discovered her at dusk while it was light enough to see

into the pool. There was no supervision of the pool area by any of the agents or employees of the defendants.

At the time of her death, Ronette Kopera was in reasonably good health and had an average life expectancy of 63.57 years. She and her mother were very close and spent as much time together as was possible, considering the fact that Mrs. Kopera worked and Ronette attended school.

This Court finds as a matter of fact, and as will be further mentioned herein as a conclusion of law, that the defendants failed to exercise ordinary reasonable care in the operation and maintenance of the swimming pool in question for the safety of invitees or tenants therein, including the deceased minor plaintiff. This lack of ordinary reasonable care by the defendants, who in the exercise of reasonable care should have foreseen the danger to children of tender years residing in the apartment complex presented by the full, unprotected water-filled pool constituted negligence which was the sole proximate cause of Ronette Kopera's death by drowning.

## CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and of the subject matter.

■■ In this diversity case, the substantive law of the State of Mississippi controls. The Mississippi Supreme Court has recognized that the owner or operator of a swimming pool owes the duty to use ordinary, due or reasonable care for the safety of invitees or patrons or to guard against injury to them, and must use due or reasonable care to provide a reasonably safe place or reasonably safe accommodations or to maintain the premises in a reasonably safe condition. *Mock v. Natchez Garden Club,* 230 Miss. 377, 92 So.2d 562 (1957), 8 A.L.R.2d 1315. In reversing the lower court which had entered a directed verdict for the defendant, the Mississippi Supreme Court in *Mock* recognized that whether the owner or operator of a swimming pool had exercised the requi-

site degree of care is a question of fact to be decided by the trier of fact and that "ordinary care" is a relative term which varies according to the facts and circumstances of each particular case. *Mock v. Natchez Garden Club, supra* at 564. See also *City of Jacksonville v. Stokes,* 74 So.2d 278 (Fla.1954). The Third District Court of Appeals of Florida in *Smith v. Jung,* 241 So.2d 874 (Fla. App.1970) laid down the same rule and went on to state that the pool facility supplied by the apartment operator for the use of his paying tenants, likewise was a business operation, being furnished to the tenants as part of the consideration for their payment of rent, like other facilities such as common rooms, stairways, walks, etc. with the difference being that a swimming pool, as a common area or facility supplied for use of the tenants, involves elements of danger inherent in its nature not unlikely to be encountered by those invited to use it.

The United States Court of Appeals for the Fifth Circuit, in reversing and remanding the lower Court which had granted summary judgment against the plaintiffs who had filed an action for injuries sustained by their six year old child in the defendant's swimming pool when another swimmer jumped backwards off the springboard striking him on the leg, quoting from the language of *Ward v. United States,* 208 F.Supp. 118 (D.Colo.1962), stated:

"Accordingly, this Court requires no direct evidence establishing 'that if a lifeguard had been present death would not have resulted;' rather, all that need be established for the requisite causal connection are such facts as would indicate with reasonable probability that the drowning resulted from the negligence of the defendant in failing to provide a lifeguard (cited cases omitted). Thus, when it is reasonably probable that the antics flowing from the unleashed energy and extravagance of youth may result in serious bodily injury, as in swimming areas, a basis exists for finding

that the negligent lack of supervision is the proximate cause of such injury." *Keating v. Jones Development of Missouri, Inc.*, 398 F.2d 1011 (5th Cir. 1968).

The Fifth Circuit in *Keating* went on to state that in cases of this kind, the question of foreseeability is a question of fact and that "negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation. Swimming pool actions provide no exception . . ." *Keating v. Jones Development, supra* at 1015. See also *Waugh v. Duke Corporation*, 248 F.Supp. 626 (M.D.N.C.1966); *Ward v. United States of America*, 208 F.Supp. 118 (D.Colo.1962).

■ This Court finds that the defendants were negligent under the facts and circumstances herein because despite the fact that they certainly were charged with foreseeing the danger presented by this water filled swimming pool located in the middle of an apartment complex which was occupied by and was frequented by minor children, they (1) failed to have a lifeguard on duty at any time; (2) failed to fence the area in question and secure it with gates and/or locks; (3) failed to cover the pool, which this Court judicially notices would be relatively inexpensive and easy to do during the time that the weather was not conducive to the use thereof; (4) failed to maintain any resuscitation or rescue equipment in the area of the pool or provide any pool supervision whatsoever; and (5) failed to drain the pool at the time that it was not expected to be used. These factors, jointly and severally, constituted negligence which proximately caused the death of Ronette Kopera entitling plaintiffs to a judgment against the defendants.

■■ The minor plaintiff, who was six years of age at the time of her drowning death was not guilty or chargeable with contributory negligence, because under the law of the State of Mississippi a minor under the age of seven years is conclusively presumed incapable of possessing the necessary discretion to charge her with negligence. *Tidwell v. Ray*, 208 F.Supp. 952 (N.D. Miss.1962); *Morris v. Boleware*, 228 Miss. 139, 87 So.2d 246 (1956); *City of Pass Christian v. Fernandez*, 100 Miss. 76, 56 So. 329 (1910); Grant, Summary of Mississippi Law, § 866 pp. 534–535 (1969).

■ Likewise, the plaintiff, Sandra Kopera, mother of Ronette Kopera, was not guilty of any contributory negligence which proximately caused Ronette to drown. See *Gordon v. Lee*, 208 Miss. 21, 43 So.2d 665 (1949).

■ Plaintiffs are entitled to recover a judgment against the defendants for the loss of society and companionship of their only child; burial expenses in the amount of $1,044.36, *Scott v. K-B Photo Service, Inc.*, 260 So.2d 842 (Miss. 1972), the cost of a mausoleum paid for by the deceased's grandmother and aunt which the plaintiffs obligated themselves to repay, *Anderson v. Jenkins*, 220 Miss. 145, 70 So.2d 535 (1954); *Lane v. Webb*, 220 So.2d 281 (Miss.1969); the value of the loss of earnings and services of the deceased until she reached majority, *Sandifer Oil Company v. Dew*, 220 Miss. 609, 71 So.2d 752 (1954).

The plaintiffs are entitled to recover a judgment of and from the defendants in the full sum and amount of $85,000.00 actual and compensatory damages, together with all costs of this proceeding.

A final judgment conforming with the above Findings of Fact and Conclusions of Law, approved as to form by attorneys for both sides, shall be presented to this Court within the time and manner prescribed by the rules hereof.