110 So.2d 718 (1959)
Deryk McCAIN, a minor, by his father and next friend, David P. McCain and David P. McCain, individually, Appellants,
v.
BANKERS LIFE AND CASUALTY CO., an Illinois Corporation, Appellee.
No. 58-207.
District Court of Appeal of Florida. Third District.
April 7, 1959.
Rehearing Denied April 29, 1959.
Sams, Anderson, Eaton & Alper and Phillip Goldman, Miami, for appellants.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellee.
PEARSON, Judge.
The appellants are a minor and his father. They appeal from a summary final judgment entered in an action brought to recover damages for injuries sustained by the eight year old boy when he walked into and broke a plate glass door. The question to be determined is whether, under those facts which were established to be without genuine issue, the defendant is entitled to a judgment as a matter of law. We hold that the question of negligence is, upon the facts of this case, an issue for the jury, and accordingly the judgment is reversed.
The complaint alleged that the defendant owned and operated the model home in which the minor was injured. It was further charged that the defendant was guilty of negligence in that:
"(1) They failed to keep the said premises reasonably safe for small children, although they knew, or should have known, that children would be on the premises with their parents;

*719 "(2) They failed to notify or warn the minor plaintiff of the presence of said glass door, although they knew, or should have known, that a minor child was likely to injure himself in the manner in which the plaintiff did injure himself;
"(3) They failed to place any stripping or other warning sign on the said glass, as is customary in this community under the same or similar circumstances."
The defendant answered, denied negligence and presented the defense that the minor was guilty of contributory negligence. Final summary judgment was granted upon the basis of the pleadings, answers to interrogatories, affidavits and certain depositions including that of the minor.
It was established that the defendant, Bankers Life, was in the business of selling homes in a subdivision. Its model homes were open to the general public and were for the purpose of stimulating the buying of homes in the subdivision. Immediately prior to the accident the minor plaintiff and his mother had visited and inspected a model home belonging to the same defendant which was located next door to the house in which the accident occurred. Both homes were fitted with sliding glass doors or panels separating the Florida room from the back yard. The minor plaintiff during his mother's inspection of the adjoining house had walked back and forth between the living room area and the backyard several times through the open glass doors. Immediately upon leaving the first model home the plaintiff and his mother went to the house next door; the accident occurred when the minor plaintiff walked into one of the glass panels in the closed door of the second house.
It is urged that the final summary judgment was proper under the general proposition that a person is required to see what is there to be seen by the ordinary use of his senses, and if it is there to be seen, it is deemed, in law, to have been seen. Cf. Kagan v. Eisenstadt, Fla.App. 1957, 98 So.2d 370. Following this view, it is urged that the present case is governed by the opinion of the Supreme Court of Florida in Pettigrew v. Nite-Cap, Inc., Fla. 1953, 63 So.2d 492, 493.
In the Pettigrew case, supra, the appellant-plaintiff was injured when she walked into a large plate glass door at the entrance of appellee's restaurant. Appellant's testimony revealed that the accident occurred in the evening, that the door was of clear glass, and that there was a wide metal strip on the top and the bottom of the door and a lucite handle located in the usual place on the door with black knobs at the top and bottom to hold it in place. At the close of the appellant's case the lower court directed a verdict for the appellee. The Court held:
"The handle, knobs, and metal strip on the door were plainly visible and the door was located at the place a door would naturally be expected. It is clear to us that that the sole proximate cause of plaintiff's injury was her failure to see that which, by the exercise of reasonable care, she should have seen."
See also Stone v. Hotel Seville, Fla.App. 1958, 104 So.2d 847. Courts in other jurisdictions have reached similar conclusions and are in accord with Pettigrew v. Nite-Cap, Inc., supra.
In Rosenberg v. Hartman, 313 Mass. 54, 46 N.E.2d 406, a business invitee upon leaving the defendant's store, walked into a glass door, which had been closed subsequent to the time of his entry. The door was described as being one large piece of practically transparent glass swung on pins at top and bottom with glass handles about a foot in length and a metal plate with a keyhole at about the usual position of a lock. The Court held:
"We do not think negligence ought to be found merely because the door was made of one large piece of glass. It could not have been wholly invisible. *720 Its handles, lock, and fittings were in plain sight. A door is to be expected at the entrance of a store."
The same result was reached in the case of Dukek v. Farwell, Ozmun, Kirk & Co., 248 Minn. 374, 80 N.W.2d 53, 56, when a business invitee brought an action against a store owner for injuries sustained when he walked into a glass plate panel constituting a part of the entrance to the store. The entrance of the store consisted of three glass doors with a glass panel on either side. The plaintiff, a Western Union messenger boy, was injured in leaving the building when he walked into the panel on the side of the exterior doors. Before he got to the doors just described, he walked through a vestibule where there were three glass doors practically identical with those described and in line with them. There were no glass panels on the sides of the interior doors. Also inside of the vestibule were hand railings for use in ascending or descending three steps and these railings were in line with the doors. The injured party had entered these premises on two other occasions. The court held "there was nothing to distract plaintiff, nor was there anything to prevent his seeing the door and distinguishing the doors from the adjacent panels." The court further held: "it is inescapable that the accident happened because plaintiff did not look where he was going."
A plate glass window case in which a minor of sixteen years of age was involved, is found in A.C. Burton Co. v. Stasny, Tex. Civ.App. 1949, 223 S.W.2d 310, 311. Here the invitee entered the place of business by passing through double doors constructed of iron grillwork, and he observed a plate glass window at one side of the door. When he later proceeded to leave the place of business, he dropped his head when some thirty feet from the doors and window in question, and continued to walk with his head down, "and never looked up again until he walked through the plate glass window." The court held that the plate glass window through which the plaintiff walked was small as compared with the double entrance doors, which were clearly defined and of which the plaintiff had full knowledge. Thus the court concluded that plaintiff failed to observe that which should have been observed by him in the exercise of reasonable care.
Acme Laundry Co. v. Ford, Tex.Civ.App. 1955, 284 S.W.2d 745, is a case involving a suit brought by a business invitee against a laundry for injuries sustained when the plaintiff walked against and broke a plate glass window as he attempted to leave the defendant's laundry. The court held that the laundry owed the plaintiff the duty to protect him against conditions on its premises which would involve an unreasonable risk to his safety, the danger of which would not be open and obvious to a person exercising ordinary care. The court further held that the plate glass windows did not constitute such an unreasonable risk and plaintiff knew of the glass doors and panels, since they were open and obvious and readily discernible.
A contrary holding to the above cases is found in Grabel v. Handro Co., City Ct. 1955, 161 N.Y.S.2d 998, 999. In that case the plaintiff walked against a glass panel serving as a section of an arrangement of glass doors in the lobby of a commercial building. The glass doors had handles, and the glass panels, one at each end of the bank of doors, were framed with stainless steel. The plaintiff had not been in the building for two weeks, although he worked there. As he was leaving the building on a warm, sunny day, he thought he was walking through an open space, but instead walked into a glass panel from which a red masking tape had been removed. The court held that the entire arrangement gave an illusion of space and "when the illusion is so successful that some hapless person is injured in mistaking the illusion for reality he can hardly be charged with contributory negligence as a matter of law."
Shannon v. Broadway & 41st Street Corporation, 298 N.Y. 589, 81 N.E.2d 324, likewise departs from the majority rule applicable to glass door or window accidents. *721 However this case appears to be an exception to the majority rule because of its factual background. Here, the plaintiff was at a sidewalk cafe. A window separated the outside tables from the cafe and on occasions was let down into the floor to permit uninterrupted passage to the outside cafe. The accident occurred on a day when the outside cafe was not in operation, and the plaintiff walked into the window. The court affirmed the appellate division (272 App.Div. 1029, 73 N.Y.S.2d 711), which latter court affirmed a judgment for plaintiff.
In Harold Corporation v. Herzberg, Fla. App. 1959, 110 So.2d 683, the factual situation is somewhat analagous to the Shannon case, supra. This court cautioned in the able opinion written by associate judge, E. Harris Drew:
"Where the question is whether a plaintiff could or should have observed the hazard, as opposed to the question of whether he must realize the significance of and keep in mind that which he admittedly sees or knows, the cases will turn upon their peculiar facts and there will rarely be a controlling precedent."
It is apparent that the only real basis for denial of liability in a glass door case is that the plaintiff ought to have observed the door or window. It was established without issue that the door in the instant case consisted of two sliding glass panels. Each panel was four feet, five-eighths of an inch in width and six feet, nine and seven-sixteenths of an inch in height. These panels were in aluminum frames, (the width of the framing is not set out in the affidavits or otherwise), and the locking stile of the aluminum frame at the jam was two and one-quarter inches in width and one and five-eighths inches wide at the center or interlocking stile. The over-all door size was eight feet, five-eighths of an inch in width and six feet, ten inches in height. The glass was transparent without any markings on its surface. Taking as established that under normal conditions the courts hold that a plaintiff should see an ordinary glass door, does it follow that a minor should have seen this door?
The question of the degree of care to which a child should be held has been before the Supreme Court of Florida upon several occasions. In Dupuis v. Heider, 113 Fla. 679, 152 So. 659, the Court considered the effect of a plea of contributory negligence in a case involving a boy thirteen years of age. It was pointed out that age is not always the determining factor on the question of the capability of exercising care. Other factors which must be considered were enumerated. They are mentality, intelligence, experience, training, discretion, and alertness. To the same effect is Turner v. Seegar, 151 Fla. 643, 10 So.2d 320. See also cases cited at 38 Am.Jur., Negligence § 205.
In Winner v. Sharp, Fla. 1949, 43 So.2d 634, it was held that a three year old child is incapable as a matter of law of conduct amounting to contributory negligence. The City of Jacksonville v. Stokes, Fla. 1954, 74 So.2d 278, 279, involves a case in which a twelve year old girl fell as a result of a hole in a sidewalk in front of her home. The sole question on the appeal of the case was whether contributory negligence appeared as a matter of law. The city conceded that it was negligent in permitting the sidewalk hole to stay unrepaired. The girl testified that she did not know about the existence of the hole. The Court pointed out that the question is always whether the plaintiff used due care for his own safety, taking into account all the circumstances, of which the visibility of the object encountered is an important circumstance, but still only one of the circumstances to be taken into consideration. Further the Court held:
"It takes more indication of danger to alert a child than to alert an adult. `Children are necessarily lacking in the knowledge of physical causes and effects which is usually acquired only through experience. They must be expected to act upon childish instincts and impulses, and must be presumed *722 to have less ability to take care of themselves than adults have.' Bagdad Land & Lumber Co. v. Boyette, 104 Fla. 699, 140 So. 798, 800."
In the Jacksonville case the court concluded that a child's prudence and judgment is itself a question of fact.
It can be said with confidence, that in whatever situation the law finds children, it usually deals with them differently than it does with adults. This fact is further illustrated by the decision of our Supreme Court in Burdine's, Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462, 463, where it was held that because of the possible lack of comprehension of danger by children a merchant owes a greater degree of care to them in the maintenance of his place of business. The following language from that case is suggestive of the rule applied here:
"Circumstances alter the application of the rule to cases. What is reasonable care to one class of invitees might fall short as to another. Those who invite children, who have not arrived at the age of discretion, to go upon their premises are required to exercise a relatively higher degree of care for their safety than to adults. That degree of care is commensurate with the attending facts and circumstances of each case. Burnett v. Allen, 114 Fla. 489, 154 So. 515; Bagdad Land & Lumber Co. v. Boyette, 104 Fla. 699, 140 So. 798; Jacksonville Electric Co. v. Adams, 50 Fla. 429, 39 So. 183, 7 Ann.Cas. 241; and Union Pacific Ry. Co. v. McDonald, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434.
"The law imposes such duty. It is a jury question whether the duty has been violated."
Takashi Kataoka v. May Department Stores Co., 60 Cal. App.2d 177, 140 P.2d 167. But see Valunas v. J.J. Newberry Co., 336 Mass. 305, 145 N.E.2d 685.
The public display of a new house is especially designed to attract families. Cf. Rainbow Enterprises v. Thompson, Fla. 1955, 81 So.2d 208. The owner is charged with knowledge that children of all ages will be accompanying their parents and will be included among his business invitees. Burdine's, Inc. v. McConnell, supra; see also 44 A.L.R.2d 1319.
As stated in Bagdad Land & Lumber Co. v. Boyette, 104 Fla. 699, 140 So. 798, 800, "[children] must be expected to act upon childish instincts and impulses". It would not be unreasonable for a jury to find that this minor had no previous experience with houses containing glass doors. It is likewise not unreasonable to find that this child experienced for the first time, what to him was a unique happening, that of passing directly through the rear of a home to the back yard area, without having to go through a door. Whether the child should have alerted himself to the actual conditions as they existed at the time of the accident presents a question of fact best decided by the common experience of the public, i.e., the jury. Accordingly, the summary final judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.
Reversed.
HORTON, Acting C.J., concurs.
GIBLIN, VINCENT C., Associate Judge, dissents.
VINCENT C. GIBLIN, Associate Judge (dissenting).
A careful consideration of the undisputed facts (evidenced by the depositions and affidavits on which the challenged summary judgment is based) impels me to an accord with the able circuit judge by whom the judgment was entered.
The minor appellant, an eight-year old boy, accompanied his mother and his maternal *723 grandmother to a subdivision in which several model homes, owned by the appellee, were open for inspection by prospective purchasers. Another lady, a family friend, was in the party. All of them entered one of the homes in which there was a sliding glass-panelled door which separated the living room from the rear yard of the premises. The boy, his grandmother and the family friend went together through the door, which was open, into the yard, while the mother went into one of the bedrooms. The boy walked around the home, re-entered it through the front entrance door and rejoined his mother. The other two ladies re-entered the house and, after it had been inspected, all four persons left the dwelling together, but the boy preceded the adults and entered alone another of the model homes in which there was also a glass-panelled door (of the same type) partitioning the living room and the rear yard. The door in the second home, however, was closed; and the boy, before any of the adults had entered the house, walked through the living room and into the closed door. The glass broke and he was injured.
The door in each of the homes consisted of two clear and transparent sheet glass panels which slid "behind each other either to the right or to the left." Each of the panels was approximately four feet in width and approximately six feet in height; and each of the panels had "an aluminum frame all around its edges." The frame was constructed of "heavy gauge aluminum extrusions." The locking stile of the aluminum frame at the jam [was] two and one-quarter inches in width and one and five-eighths inches wide at the center or interlocking stile"; and "the overall frame size into which the two by-pass panels were set [was] eight feet and five-eighths of an inch in width and six feet and ten inches in height." The purpose of the door was to "provide a feeling of spaciousness and beauty, as well as greater ventilation."
There is an apparent discrepancy, as to the thickness of the glass panels, between an answer, made by an assistant secretary of the appellee company, to an interrogatory propounded by the appellants, and an affidavit, filed in support of the motion for the entry of a summary judgment, made by the vice-president of the company by which the doors were manufactured. In response to the interrogatory it was stated that the thickness of the panels was three thirty-seconds of an inch; and in the affidavit it was sworn that the thickness was seven thirty-seconds of an inch. There is nothing in the record to indicate or suggest that the "discrepancy" was called to the attention of the judge below. The appellee movant relied on the depositions and the affidavits appended to its motion (including the mentioned affidavit in which an officer of the manufacturing company swore that the thickness was seven thirty-seconds of an inch). The record does not reveal that the appellants, in opposition to the motion, relied on the mentioned answer of a subordinate officer of the appellee company. Even if the "discrepancy" came under the scrutiny of the judge below, surely he was justified in regarding the statement that the glass in the door panels was only three thirty-seconds of an inch thick as an inadvertent error, and in regarding the affidavit of the vice-president of the manufacturing company as correct. Obviously, it is an absurdity to think that the glass in the door panels was only three thirty-seconds of an inch thick.
Counsel for the appellants, however, ignoring the affidavit, state in their brief that the glass was "a mere three thirty-seconds of an inch thick, which undoubtedly accounts for the fact that the glass broke when the child walked into it."
Counsel also urge in their brief that there is "a conflict in the evidence as to whether [the door] had an aluminum frame." There is, however, no such conflict. It is true that when deposed the minor appellant said that he did not see any aluminum framing; but he did not testify that there was *724 none. That there was such framing is an undisputed fact.
The appellants contend that there is a substantial factual dispute which requires the submission to a jury for determination of the issue of whether the appellee violated its duty to maintain the model home in which the accident occurred reasonably safe for business invitees. The judge below held (and correctly I think) that the contention is without merit.
Surely it cannot be logically argued that the appellee should have anticipated that the door, because of its location, character and condition, would constitute a danger to a reasonable and prudent person exercising ordinary care for his own safety. While the glass panels of the door were clear and transparent, the aluminum framing was in plain sight. Furthermore, no reasonable and prudent person would conclude or assume that there was no partition between the living room and the rear yard. No intelligent person would think that a doorless and unobstructed entrance into the home would be provided for intruders or for the invasion of animals or insects. See Rosenberg v. Hartman, 313 Mass. 54, 46 N.E.2d 406, cited in Pettigrew v. Nite-Cap, Inc., Fla., 63 So.2d 492.
Counsel for the appellants argue, however, that while the model home in which the accident occurred may have been reasonably safe for adult invitees, it is for a jury to decide whether it was reasonably safe for an eight-year old child. It is true, of course, that children of tender years, because of their immaturity, inattention or lack of judgment, are not likely to be observant of some dangers or risks which an adult might reasonably be expected to observe.
The fallacy of the argument lies in the assumption (on which it must be predicated) that it was the duty of the appellee to anticipate that unaccompanied and uncontrolled children of tender years would enter the model homes and would roam unsupervised about the premises. Even though the appellee should reasonably have anticipated that adult invitees, in their inspection of the homes, would be accompanied by children, it was not required to anticipate that a parent would not supervise and control a child of tender years so as to safeguard the child from dangers or risks readily observable by the parent. It is the duty of a parent to exercise reasonable care in controlling a minor child so as to protect the child from bodily harm. The child may be so young or immature as to be incapable of negligence, but this does not absolve the parent from the performance of the duty to exercise reasonable care in controlling the child's conduct. See Restatement of the Law of Torts, Volume II, section 316, page 858 et seq.
The appellee was endeavoring to sell homes to adults. The location, character, condition and purpose of the glass-panelled doors were, or should have been, obvious to reasonable and prudent adult invitees. To hold that the appellee was required to anticipate that an invited parent would relinquish parental supervision and control and permit a child of tender age to wander alone into a situation involving danger or risk which was, or should have been, obvious to the parent, and against which the parent could and should have protected the child, is to hold, of course, that the appellee was obligated to anticipate that a parent would not discharge his or her duty and that the appellee was required to safeguard the child from the acts or omissions of a neglectful or inattentive parent.
The question of whether there is an adequate evidentiary basis for a finding, as a matter of law, that the minor appellant was himself guilty of contributory negligence which bars his recovery of damages from the appellee, is not before this court. The primary question is whether there is an adequate evidentiary basis for a finding, as a matter of law, that the appellee was not guilty of actionable negligence. Not until such primary question shall be negatively *725 answered can the secondary question of contributory negligence arise. The judge below answered the primary question in the affirmative. There is nothing in the record to justify the conclusion or inference that the judgment appealed from is predicated, in whole or in part, on a finding that the appellant minor was guilty of contributory negligence. Concededly, if the judge below had answered the primary question in the negative, the secondary question of whether the appellant minor was guilty of contributory negligence would have been for a jury to decide, because the answer would have depended on a consideration of his age, his intelligence, his training and experience, his powers of observation, and other factors. Nothing before the judge below provided a basis for an answer to such secondary question. The evidence before him did provide, however, an adequate basis for an answer to the primary question; and, in my opinion, his affirmative answer is correct.
No one is more appreciative than I of the soundness of the universally approved rule that a summary judgment should not be entered if there is a genuine issue as to a material fact which should be determined by a jury. The most cogent reason for the rule is, of course, that a litigant's constitutional right of trial by jury cannot be nullified by a judge's invasion of the jury's province when there is a substantial factual dispute. I am aware too of the often-quoted statement of Professor James W. Moore, in his excellent treatise on the federal rules of civil procedure, that "actions for negligence, defamation, or false imprisonment, are fairly illustrative of the types of issues that are not generally susceptible to summary adjudication." The eminent professor does concede, however, that "there have been situations where summary judgment was properly rendered in all of these actions." He need only emerge from the seclusion of the campus and visit some of our courts in populous metropolitan areas to learn that such courts are flooded with a deluge of negligence actions in hundreds of which the entry of summary judgments is justified.
Our summary judgment rule will serve no useful purpose if, because of the injection of frivolous or unsubstantial factual issues, our circuit judges are to be precluded from purging their crowded dockets of baseless litigation by the entry of summary judgments. If phantom issues are to suffice, the disposition by our circuit court of many negligence actions, in which no substantial and genuine factual disputes are presented, will consume and waste much of the time and energies of our circuit judges, court attendants, jurors and attorneys, at considerable expense to our taxpayers, and will unduly delay the adjudication of worthier causes.
In the case at bar we have witnessed the adroit attempt to "create" triable issues. There has been the effort of counsel for the appellants, by the assertion that the thickness of the glass in the panelled door in the home in which the accident occurred was "a mere three thirty-seconds of an inch," to convince us that the question of whether the appellee was negligent in providing a door in which the glass was extremely and dangerously thin is a jury question. Counsel, by the statement in their reply brief, unsupported by the record, that there is "a conflict in the evidence as to whether [the door] had an aluminum frame," have endeavored to persuade us that there is a real and substantial factual issue, which can be decided only by a jury, as to whether the location, character and condition of the door were obvious, or should have been obvious, even to a reasonable and prudent adult invitee. Although the record affords no warrant for their doing so, counsel infer that the judge below based the summary judgment on a finding, as a matter of law, that the appellant minor was guilty of contributory negligence, and, by such inference, have sought to lead us to the erroneous conclusion that the judge improperly decided a jury question. Another purpose *726 of counsel has been to have us adopt the fallacy that the only real question involved is whether the appellee, because of the location, character and condition of the glass-panelled door in the home in which the accident occurred, was guilty of negligence in maintaining premises which were unsafe for the minor appellant. No such question is presented by the record before us. If the implied invitation to visit and inspect the homes had been extended to an unaccompanied, unsupervised and uncontrolled child of tender age, it may be that the appellee should have anticipated that the child, because of his immaturity, inattention or lack of judgment, would impetuously run or walk into the door, and should have provided a custodian for the child, or have taken other measures to safeguard him from his own inattention or lack of judgment. Since, however, no such invitation was extended, the appellee had the right to assume that a child of tender age, brought by a parent to the premises, would not enter the home unless accompanied by the parent, and the right to anticipate that proper precaution would be exercised by the parent to protect the child from any dangers or risks incident to conditions readily observable by the parent.
Unfortunately, my learned judicial superiors, with whom I have been privileged to sit, have succumbed to the illogic of counsel for the appellants. In the majority opinion it is stated that "it is apparent that the only real basis for the denial of liability in a glass door case is that the plaintiff ought to have observed the door or window"; and the writer poses the question: "Taking as established that under normal conditions the courts hold that a plaintiff should see an ordinary glass door, does it follow that a minor should have seen this door?" The question, the majority hold, is one which must be answered by a jury. My view, on the other hand, is that the stated question is not presented. The question is not whether the minor appellant's age, intelligence, training, experience and powers of observation were such that he should have seen the closed door. The real question involved, I insistently reiterate, is whether the appellee was required to anticipate that the adult parent, by whom the minor appellant was taken to the premises, would relinquish parental control and supervision and permit the child to enter the home unaccompanied and subject himself to dangers or risks from which he could and should have been safeguarded by the parent to whom such dangers or risks were or should have been known. That it was not the appellee's duty, in the circumstances revealed by the record, to protect the child from the acts or omissions of a neglectful or inattentive parent, is to me as evident as it undoubtedly was to the judge below, whose common sense and experience in human affairs guided him to what I think is a correct and just conclusion. I regret that his judgment is not to be affirmed.