124 So.2d 42 (1960)
Rena B. RIEDEL, Appellant,
v.
Elizabeth G. DRISCOLL, a minor, by Stanley J. Driscoll, her father and next friend, and Stanley J. Driscoll, individually, Appellees.
No. C-68.
District Court of Appeal of Florida. First District.
November 8, 1960.
*43 Howell, Kirby, Montgomery & Sands, Jacksonville, for appellant.
Raymond, Wilson, Karl & Fink, Daytona Beach, for appellees.
STURGIS, Acting Chief Judge.
Rena B. Riedel, defendant below, appeals from a final judgment awarding damages to plaintiff Elizabeth G. Driscoll, a minor, for personal injuries resulting from an automobile accident, and also awarding damages to her co-plaintiff, Stanley J. Driscoll, Elizabeth's father, for medical expenses incurred by him as an incident to the treatment of the injuries sustained by Elizabeth, and for loss of her services during minority.
At issue upon the trial of this cause was the question of Elizabeth's contributory negligence as raised by defendant's second defense. Of primary concern, therefore, is the accountability of the minor for negligent acts. It appears that she was fourteen years old at the time of the accident, which occurred on a clear sunshiny day in the City of Daytona Beach near the intersection of Halifax Drive and Seaview Avenue, public roadways. She is described by her father as being at that time healthy, athletic, friendly, a good student and obedient daughter. She maintained a "B" average in the 9th grade of public school. She was an accomplished swimmer. She is further characterized by her father as having been "a very gay, effervescent type of girl", intelligent and alert. Her integrity is unquestioned and her social relations were excellent. She dated on occasion with boys to school affairs and to movies. She occasionally acted as a baby sitter. For several years prior to the accident she owned a bicycle and rode in the neighborhood of her home, located two blocks diagonally from the scene of the accident. She had on numerous occasions traveled by the mentioned intersection and, according to her testimony, had "for a good many years" known that it was heavily traveled by automobiles. She acknowledged that her father and mother had often warned her to carefully watch for cars when she was out on the street.
On the day of the accident Elizabeth came home on a regularly operated for hire city bus  not a school bus. In proceeding north on Halifax Drive the bus came to its regular stop immediately south of the intersection of that street with Seaview Avenue, so that its right front door was about even with the sidewalk of Seaview Avenue; and it was standing there at the time of the accident. Halifax Drive is a two-lane street at that point, is 18' 4" in width, and the traffic lanes were divided and marked by a center stripe. The width of the bus was 7' 8". In its stopped position it came within inches of the center line of the street.
When the right front and right rear doors of the bus were opened to receive and discharge passengers, Elizabeth descended from the rear door and forthwith proceeded south on the parkway alongside the bus to its rear, then turned west alongside the rear of the bus and proceeded in that direction with the evident purpose of crossing Halifax Drive. She was struck by defendant's southbound automobile at a point across the center line and within the southbound lane of the street, the impact of her body with the automobile being just inside the left front headlights.
Although Elizabeth became a witness in her own behalf she was unable, because of a condition which her doctor diagnosed as "retrograde amnesia", to testify as to any *44 of the essential facts immediately surrounding the accident, saying that she could not remember them. We must turn, therefore, to the testimony of the defendant and other witnesses to determine those facts.
The evidence admittedly reflects that at the time defendant applied brakes immediately preceding the accident, her car was exceeding the 25 m.p.h. speed limit of the city by between 5 to 8 m.p.h.; further, that the brakes, though partially serviceable, were not in perfect working order. While the facts do not admit application of the so-called last clear chance doctrine, the mentioned circumstances are sufficient, as defendant-appellant concedes, to warrant the jury in concluding that she was guilty of negligence contributing to the accident and its result. Defendant vigorously contends, however, among other things, that the uncontradicted and overwhelming weight of the evidence compels the conclusion that the plaintiff minor was also guilty of negligence proximately contributing to her injuries. In this aspect of the appeal we announce, at this point, that our discussion of defendant's testimony is for the purpose of exploring all facts upon which the question of contributory negligence depends.
The uncontradicted evidence establishes that the point of impact between the automobile and Elizabeth's person was three feet or less across and to the west of the center line of Halifax Avenue, entirely within defendant's proper lane of traffic.
Defendant testified that she had only a momentary view of Elizabeth before the accident, saying: "I saw her clothing in the center. I never saw her face. I just saw a fleeting glance * * * I saw a fleeting glance of clothing, I couldn't say it was the girl * * * I couldn't see whether she was running or not. I was in my lane and she was back of the bus." She testified that when she first saw Elizabeth she was moving in a westerly direction coming from behind the bus. And in attempting to describe the lapse of time between first seeing her and the moment of impact, said: "It was just" (here the defendant clapped her hands) "she just darted in the side of my car."
Plaintiff's witness Barbara Perry, Elizabeth's schoolmate, saw Elizabeth before and as she started around the corner of the bus. She said, "She [Elizabeth] was walking fairly fast"; that she usually walked fast and at the time was walking "Maybe a little bit faster than normal * * * It seemed like she was walking quickly around the corner of the bus"; that it "seemed like a couple of seconds" between the time Elizabeth rounded the corner of the bus and the moment she (Barbara) heard the impact.
An eyewitness for plaintiff, Thomas Hickey, testified that he was in an automobile immediately behind and following the bus; that he saw Elizabeth descend from and stroll toward the back end of the bus, then turn and walk westerly into Halifax Drive around the back end and "approximately next to the bus"; and that she was not running. Hickey also testified that she stepped out from behind the bus "possibly one, two or three steps, I don't recall," before the accident happened, and that she had passed across the center line of the street before she was struck by defendant's automobile. Upon being asked, "What direction was the girl facing at the time she came in contact with the car?", he answered, "She stepped, when she made her step, when I knew she was going to be hit, she looked and she started leaning back and that is when she got hit."
Another eyewitness, Kenneth A. Lake, testifying for the defendant, was traveling north in the second car that came to a stop behind the standing bus. He stated that upon descending from the bus Elizabeth walked to the rear of the bus, turned and evidently spoke to other children who got off the bus with her, then rapidly went behind the bus and out into the street where she was struck by defendant's automobile. He testified that after turning her head, *45 apparently to speak to the other children, "She rapidly went from that corner of the bus without any hesitation at all right into the street." Further:
"The girl ran and was  it wasn't a high run  it was a normal pace that she was going through  it is called a hurried exit * * * I do believe that the girl momentarily saw the car before it hit her and that gave her like anybody would do  it is a repulsive [impulsive?] action  `Look at what I am into'. Well, she had it  whether it was a trip, a skip, a jump, or what you might want to call it  the girl made an action as to stop herself, that was definite in my mind that she tried to stop and couldn't."
As heretofore indicated, one of defendant's assignments of error is predicated on the premise that the overwhelming weight of the evidence conclusively establishes that the plaintiff minor's own negligence proximately contributed to her injury. The necessary concomitant to that proposition is that the verdict of the jury is so contrary to the evidence as to clearly indicate it is the product of passion or prejudice.
Another assignment of error seeks reversal on the ground that a remark made in the presence of the jury by plaintiff's counsel was so prejudicial in character that it was error to deny defendant's pertinent motion for a mistrial. If that contention is correct, the circumstance complained of may well have deprived the jury of the proper climate in which to consider the evidence as it related to the question of contributory negligence, and thus had the effect of polluting its verdict. Thus the first and second assaults of the appellant are somewhat interrelated.
Other grounds of error challenge the propriety of certain charges given to the jury and the court's refusal to grant certain charges requested by defendant.
It is apparent that the variance between the versions of the eyewitnesses (1) as to the distance traveled by Elizabeth from the point at the left rear of the bus, where her presence might have been detected by the defendant, to the point of impact with the automobile, and (2) the prior acts on her part, are so infinitesimal as to be attributable primarily to normal differences in manner of expression. After carefully considering these and other uncontested facts (the width of the street; the width of the bus; the proximity of the west edge of the bus to the center line of the street; the distance between the west rear edge of the bus to the point in the southbound traffic lane where the accident occurred; the place of impact of Elizabeth's person with the automobile; the fact that she was walking at a spritely gait; the fact that she was crossing a street known to her to be heavily traveled by automobiles and at a point where under the rules of the road pedestrians are not normally permitted to cross; her age, intelligence, health, and attainments) we are compelled to conclude that the overwhelming weight of the evidence established beyond peradventure that Elizabeth's own negligence proximately contributed to her injury. Assessing, as we have, every inference of the evidence in the light most favorable to her, it is apparent that if she observed defendant's approaching automobile at any time prior to impact, it was only for a fleeting instant; and the record does not reflect any situation, circumstance or condition that would operate to remove the duty resting on her to take note of those dangers which, by the use of her normal senses, she could and should, in the exercise of due care, have seen and taken steps to avoid before entering the street under the conditions then existing. Reluctant as we are to disturb the jury verdict and conscious as we are of deep sympathy for the injured child, our conclusion is supported by firm precedent.
In Griffis v. Du Bow, Fla.App. 1959, 114 So.2d 207, 209, this court affirmed a summary judgment for defendant, holding that the facts, which are so strikingly parallel *46 to the basic facts involved on this appeal that we prefer to refer the reader to the cited case rather than restate them, as a matter of law disclosed contributory negligence on the part of the minor plaintiff. Fussell, J., speaking for this court said:
"Since the minor plaintiff only had 3 or 4 feet to go into the street from between the parked cars before he ran into the defendant's car, the defendant would have had no chance to avoid the collision, even though he had seen the minor plaintiff prior to the accident. Also, the act of the minor plaintiff in running from between the parked automobiles without looking and into the side of defendant's car clearly constituted an act of negligence on his part." (Emphasis supplied.)
In Turner v. Seegar, 1942, 151 Fla. 643, 10 So.2d 320, 321, the six-year-old plaintiff was waiting with other children by the roadside on the way to school when she suddenly entered the road in front of defendant's oncoming car which, on a clear day, was approaching at a moderate rate of speed with no traffic or obstructions in view. Plaintiff was not observed by the defendant until the moment of impact. In holding that a child of that age could be guilty of contributory negligence, our Supreme Court quoted from Dupuis v. Heider, 113 Fla. 679, 152 So. 659, 661, as follows:
"Age is not the determining factor always on the question of the capability of exercising care. If a person is capable, by reason of mentality, intelligence, experience, training, discretion, alertness, of exercising care in a given situation, he is amenable to the consequences of his contributory negligence in a transaction resulting in his injury."
To the same effect see Larnel Builders, Inc. v. Martin, Fla. 1959, 110 So.2d 649; McCain v. Bankers Life & Casualty Co., Fla.App. 1959, 110 So.2d 718, 68 A.L.R.2d 1194; Stover v. Stovall, 1931, 103 Fla. 284, 137 So. 249.
In Rubio v. Armour & Co., 1927, 94 Fla. 761, 116 So. 40, 41, the Supreme Court, in affirming a directed verdict for defendant based on contributory negligence of an adult plaintiff, observed that "Plaintiff did not see the automobile, nor did the automobile driver see the plaintiff until too late to prevent the accident," and said:
"As we view this case, the driver of the automobile could not see the plaintiff in time to prevent the injury. He was driving his car where he had a right to drive it, and at a reasonable and moderate rate of speed. It appears that plaintiff ought to have been able to see the automobile had he looked, and that plaintiff certainly had reason to know and believe that there was considerable traffic in the street at the time he walked around in front of the street car."
The evidence in the case on appeal clearly establishes that the 14-year-old minor was of such age, experience and attainments as to be accountable for contributory negligence in failing to observe, appreciate, and avoid obvious danger. Teddleton v. Florida Power & Light Co., 1941, 145 Fla. 671, 200 So. 546. There is no competent evidence upon which to predicate a reasonable inference that defendant had cause to assume that the plaintiff minor would dart or step from the rear of the bus directly into defendant's proper lane of travel at a point in the street where under the rules of the road pedestrians were not supposed to cross. Sharpe v. Aqua Systems, 1943, 153 Fla. 154, 13 So.2d 903. The rights of pedestrians and motorists on the highways are reciprocal. The requirement that each obey the rules of the road does not in any manner detract from the related rule that a higher degree of care must be exercised in areas where children are known to gather or when they are seen to be present; the facts in this case being such that application of that rule does not change the result.
Having determined that the overwhelming weight of the uncontradicted evidence *47 shows that contributory negligence on the part of the minor plaintiff was duly established, the conclusion is inescapable that the verdict of the jury was the result of passion or prejudice and for that reason alone it was error to deny the motion for a new trial.
Appellant's second contention deserves our disposition. Approximately one-half hour after the jury retired to consider its verdict it returned to the courtroom for further instructions, in the course of which a juror inquired: "Was the defendant cited by the Daytona Police for traffic violation?" The court replied: "* * * what happened in the traffic court in Daytona Beach is of no concern to the jury in trying this case," and inquired, in the jury's presence, if counsel agreed. Defendant's counsel answered, "Yes." Plaintiff's counsel then said, "Unfortunately yes, Your Honor." Defendant thereupon moved for a mistrial, insisting that because of that remark "the rights of the defendant have been prejudiced beyond remedy by the implication that it leaves." The court's immediate response was, "Just sit down, Gentlemen." The court then discussed another question asked by the jury, after which, upon insistence of defendant's counsel for a ruling, the motion was denied. The trial judge did not admonish the jury to disregard the remark, which clearly had the effect of indicating to the jury that defendant had in fact been cited and convicted by the City of Daytona Beach for a traffic violation connected with the accident. Proof to that effect would of course, have been as wholly inadmissible as the indirect suggestion of counsel for defendant was improper. The impression that might have been and likely was produced by that statement on the mind of the alertly inquiring jury, however unintended the result or unintentional the inference, provokes the considerations discussed in Pensacola Transit Co. v. Denton, Fla.App. 1960, 119 So.2d 296, 298, where in dealing with the injection into the trial of a personal injury case the question of the possibility of defendant's liability as an insured, Carroll, J., speaking for the court said:
"Under any court system it is difficult to attain a true and just result even under the most favorable conditions because of the frailty of man and his subjectivity to various prejudices and other influences that may warp his judgment in attempting to attain the ultimate truth in a given factual situation. The injection by either party to a cause, whether deliberate or inadvertent, of any such improper influence in a jury trial is a distinct disservice to the administration of justice, and lawyers, as officers of the courts, and the courts, on their own motion if need be, must be ever vigilant to see that no such influence creeps into the proceedings in even the slightest degree and subverts the noble purpose of our court system to provide `justice under law.'
"The injection of such an influence makes the task of an appellate court an impossible one. No one on earth can tell with certainty the full effect of that influence upon a juror's mind. In a case of evidence of insurance, for instance, who can tell whether a juror might not have a stronger prejudice against the defendant than against an insurance company? Then, again, who can tell whether a judge's instruction to disregard a mention of insurance would not serve to emphasize the fact of insurance rather than to eliminate it from his mind? The only acceptable answer to this problem is for the bench and bar religiously to keep every improper influence of every nature from coming before a jury, lest such influence act as a festering sore and result in a miscarriage of justice."
In line with that pronouncement, we hold that under all the circumstances the trial court also committed error in denying defendant's *48 motion for a mistrial. For that reason, also, a new trial should be awarded.
While appellant's argument as to grounds of error challenging the propriety of certain charges given to the jury and the refusal to give certain charges requested by defendant is persuasive in some but not all respects, in view of our conclusion on the other points raised we do not deem it necessary to labor this opinion with a discussion of them.
Reversed and remanded for a new trial.
CARROLL, DONALD K., J., and MASON, ERNEST E., Associate Judge, concur.