**Emily S. WAUGH, b/n/f Samuel F. Gantt, Plaintiff,**

v.

**The DUKE CORPORATION and Duke Motor Lodge, Inc., Defendants.**

**No. C–125–D–64.**

United States District Court
M. D. North Carolina,
Durham Division.

Jan. 10, 1966.

E. C. Brooks, Jr., and E. C. Brooks, III, of Brooks & Brooks, Durham, N. C., for plaintiff.

Clem B. Holding and W. C. Harris, Jr., of Holding, Harris, Poe & Cheshire, Raleigh, N. C., for defendants.

EUGENE A. GORDON, District Judge.

This action was brought by Emily S. Waugh, B/N/F Samuel F. Gantt, to recover damages for personal injuries which she received when she walked into a glass panel of a motel owned and operated by The Duke Corporation.

A jury trial was waived and the matter was heard by the Court sitting without a jury. The defendant moved for dismissal of the plaintiff's action and for judgment on the pleadings at the close of the plaintiff's evidence. The Court reserved its decision on the motion until the completion of all the evidence at which time the defendant renewed its motion. The Court further reserved its decision on the motion pending receipt of proposed findings of fact and conclu-

sions of law from counsel for the respective parties.

Having now carefully considered all of counsels' proposals, arguments and contentions, as well as the testimony, pleadings, stipulations, briefs and exhibits submitted, and the reasonable inferences to be drawn therefrom, the Court pursuant to Rule 52 of the Federal Rules of Civil Procedure makes its Findings of Fact and Conclusions of Law.

### Findings of Fact

1. At the time of the institution of this action, the injured party, Emily Waugh, was a citizen and resident of West Virginia. The defendant, The Duke Corporation, is a corporation organized and existing under and by virtue of the laws of the State of North Carolina and maintains its registered office in Durham, North Carolina. The action is for a sum in excess of $10,000.00.

2. Duke Motor Lodge, Inc., was an original party defendant but it was stipulated that the Duke Motor Lodge, Inc., was not a proper defendant and an order was issued dismissing said defendant as a party.

3. Samuel F. Gantt, a citizen and resident of the city and county of Durham, North Carolina, located within the Middle District of North Carolina, was appointed next friend of Emily S. Waugh and authorized to institute this action in her behalf.

4. The defendant, The Duke Corporation, acquired ownership of the Duke Motor Lodge on April 28, 1960, and disposed of ownership thereof on December 31, 1963. The defendant was, therefore, the owner and operator of the motel on September 27, 1963, the date of the injury complained of in the complaint.

5. Duke Motor Lodge is located in Durham, North Carolina. Room 58 of the Duke Motor Lodge is one of a series of rooms of cinder block construction arranged in the shape of a "U" and partially enclosing a courtyard. Dual entranceways give access to room 58. One is in the west wall of the room and gives access to the motel parking area, hereinafter referred to as the "west door." The other is in the east wall of the room and opens into the interior courtyard, hereinafter referred to as the "east door." The inner courtyard consists of an expanse of grass, bushes, shrubs and contains a swimming pool.

6. The interior walls of room 58, the north, south and west walls, are of exposed cinder block and are painted a light cream or off-white color. The remaining wall, the east wall, which faces the courtyard, consists of four divisions or panels. One panel, that adjacent to the south wall contains a wooden door about 2½ feet wide and painted a color identical to that of the wall. The door is set in a framework which is painted or stained a darker color than that of the door and which matches the exposed beams of the ceiling. The framework, above described, extends across the remainder of the east wall and divides the balance of the space into three sections.

7. The three remaining panels or sections consisted of large sections of plate glass manufactured and installed by Pittsburg Plate Glass Company. The panels of glass were 38⅞ inches wide, 77½ inches long and ⁷⁄₃₂ of an inch in thickness. These glass panels were not fitted flush with the floor and ceiling but were set in wooden strips which matched the framework. These wooden strips were approximately two inches in height. On September 27, 1963, these panels were clean, clear and highly polished. The panels of plate glass bore no decals or other markings and were not protected by rails, guards or other devices. The east wall was equipped with draperies which could cover the full extent thereof but on September 27, 1963, they were not drawn. The aforementioned day was bright and sunny and the interior of room 58 was somewhat dimmer than the lighting in the courtyard. Through the glass panels, the courtyard containing grass and shrubs was visible.

8. Room 58 was, at the time of the accident, occupied by Mrs. Eugene A.

Stowers, a registered guest of the hotel and the grandmother of Emily Waugh. At the time of the accident, Emily Waugh was a child of the age of six years and some ten months. She arrived at the Duke Motor Lodge in the late afternoon of September 27, 1963, with her parents, Mr. and Mrs. Harry M. Waugh, and, after registering as guests of the motel, but before going to their assigned room, No. 55, Emily Waugh and her parents visited Mrs. Stowers' room, No. 58.

9. Emily Waugh entered room 58 through the west door followed by her brother and then her father. She thereupon greeted her grandmother. Upon being released from her grandmother's embraces, she decided to go into the courtyard. Believing the glass panel adjacent to the door to be an open space giving direct access to the courtyard, she walked into it. At the time she left her grandmother's arms, she was some five or six feet from the glass panel. There were no chairs or other obstructions in front of the panel with which the plaintiff came into contact.

10. At the time of the accident, Emily Waugh weighed between 41 and 44 pounds and was between 48 and 49 inches in height. When she walked into the panel, the glass broke leaving a jagged hole approximately the size of a football at about the level of her head. The broken glass then fell into the room and consisted of various sized fragments some as large as a man's hand, some smaller and all sharp edged.

11. Emily Waugh was cut about the face, arms, left leg and knee. The cut on her face was in the area of the lateral aspect of her right forehead, descending obliquely and vertically past the outer end of her right eyebrow and on down to the area of the cheekbone. The cut extended through the full thickness of the forehead skin and the skin of the upper face over the cheekbone but was not down to the bone proper. No severed nerves were detected. She was given out-patient treatment for her injuries at the Duke Hospital.

12. Approximately nine months after the accident, Emily Waugh was again admitted to the Duke Hospital for the purpose of surgical treatment of scars resulting from the accident. A surgeon undertook a derma abrasion in the cheekbone area and made traverse eliptical incisions of the scar in the right lateral forehead area in order to camouflage the scar resulting from the accident and to disguise it by employing the natural configurations of the face (i. e., the normal folds of the forehead skin).

13. There has remained after the above-described operations a thin scar running from the right eye to the top of the forehead which does not tan as does the adjoining skin. This scar, however, is barely visible and then only in a good light and closer than three feet. As the child grows, the scar will diminish in size.

14. Following the injuries complained of, Emily Waugh has exhibited a high degree of nervousness and the scar has continued to itch. Also following the injuries, there has been an increase in Emily Waugh's asthma attacks, increasing attacks of a rash (both of which had existed prior to the injury) and some loss of weight. No causative relationship between the injuries and the increasing difficulty with the asthma and the rash and the loss of weight was established.

15. Previous to the accident, Emily Waugh had twice been a guest in motels containing glass panels somewhat similar to that of the Duke Motor Lodge, but in one of such motels, the drapes had remained drawn throughout the entirety of her stay therein, thereby concealing such panels.

16. The glass in the panels in room 58 was known in the trade as heavy sheet glass or crystal plate glass and was properly installed by the Pittsburg Plate Glass Company and was of the type and kind employed in the vast majority of motels utilizing glass panels as part of their construction.

17. Other forms of glass panels are available, such as tempered glass and

laminated glass which would not shatter as easily as the crystal plate glass utilized in the Duke Motor Lodge. Also, crystal plate glass of increased thickness would be less likely to shatter than that of the thickness utilized in the construction of the Duke Motor Lodge. The defendant was not negligent in utilizing glass of the type employed in the Duke Motor Lodge.

18. On three occasions, prior to the injury of Emily Waugh, guests of the motel had collided with glass panels in various parts of the motel.

19. The defendant was negligent in failing to take action to warn the plaintiff of the existence of the glass panels or failing to place some warning device on or about the panels so as to place a small child on notice of their existence and such negligence was the proximate cause of the injuries to Emily Waugh.

20. Emily Waugh was not contributorily negligent.

### Discussion

The Court finds as a fact that the defendant, The Duke Corporation, was negligent in that it failed to take proper measures to warn Emily Waugh of the existence of the floor to ceiling glass panels which constituted the major portion of the east wall of room 58 of the defendants' motel and in that it failed to construct guards around such or place anything around or on the glass to give notice that a panel existed and failed to give verbal warning to Emily Waugh and such negligence was the proximate cause of the child's injury.

There is no North Carolina case on the question of the liability of a proprietor of a business establishment to a business invitee for injuries sustained by such invitee colliding, by his own motion, with glass panels or doors in the business establishment.

Chapter 72, § 1 of the General Statutes of North Carolina relied upon by the plaintiff and which states, in part, that an innkeeper is obligated to provide "suitable rooms" for strangers and travelers which he accepts as guests provides little guidance for the Court for even if Stone v. Texas Co., 180 N.C. 546, 105 S.E. 425, 12 A.L.R. 1297 (1920); Murray v. Bensen Aircraft Corp., 259 N.C. 638, 131 S.E.2d 367 (1963), and others wherein it has been held that a violation of a statute enacted for the safety of the public constitutes negligence *per se* are given their broadest possible interpretation, Chapter 72, § 1 of the General Statutes of North Carolina itself does no more than state the common law duty of an innkeeper.

The proprietor of an inn or motel, although not an insurer of the safety of his guests, even his infant guests, is under an affirmative duty to protect his guests from an unreasonable risk of physical harm. Patrick v. Springs, 154 N.C. 270, 70 S.E. 395 (1911); 29 Am. Jur., "Innkeepers," § 57; A.L.I. Restatement of Torts, § 314A.

The duty of an innkeeper to a guest who is an infant is a greater duty than that owing to his adult guests and he is bound to consider whether his premises, although safe enough for an adult, present any reasonably avoidable dangers to his infant guest. 29 Am. Jur., "Innkeepers," § 58.

There are no North Carolina cases which consider this special relationship which an innkeeper bears toward his infant guests. There are, however, two outstanding cases in other jurisdictions which consider this relationship. In Baker et ux. v. Dallas Hotel Co., 5 Cir., 73 F.2d 825, 827 (1934), the Court held:

> "When a child of tender years is accepted as a guest, the inexperience and the natural tendencies of such a child become a part of the situation and must be considered by the innkeeper. We do not mean that the innkeeper becomes the nurse of the child, or assumes its control when accompanied by its parents, *but only that he is bound to consider whether his premises, though safe enough for an adult, present any reason-*

*ably avoidable dangers to the child guest."*

(Emphasis supplied)

This case involved an action for damages for the death of a small child, who briefly out of sight of its parents, climbed into a window of the defendant's hotel, leaned against a defective window screen which swung outward causing the child to fall to its death.

Crosswhite v. Shelby Operating Corp., 182 Va. 713, 30 S.E.2d 673, 153 A.L.R. 573 (1944), involving nearly identical facts adopted the rule set forth in Baker et ux. v. Dallas Hotel Co., supra, and quoted extensively from the earlier case.

■ This Court has found as a fact that the glass panels in the Duke Motor Lodge were installed in the usual manner, according to the customs of the trade and are similar to glass of the type and thickness employed in other motels of recent vintage, however, the mere fact that there has been compliance with the general standards of the trade and general usages of the business is not itself conclusive on the issue of negligence. Grant v. Graham Chero-Cola Bottling Co., 176 N.C. 256, 97 S.E. 27, 4 A.L.R. 1090 (1918); Virginia Electric & Power Co. v. Carolina Peanut Co., 4 Cir., 186 F.2d 816, 32 A.L.R.2d 234 (1951).

This Court has also found as a fact that the defendant motel was not negligent in utilizing the type of glass, i. e., crystal plate of the thickness which it employed in the panels. The negligence of the defendant therefore consists of something other than its employment of defective or unsafe material in the construction of its motel and that negligence, the Court finds, consists of the failure of the defendant to warn Emily Waugh of the potential danger of the glass panels adjacent to the east door of the room or to place on said panels some marking, device or some guard in front thereof which would prevent a child from inadvertently walking thereinto.

It is impossible to reconcile the cases collected at Annot. 68 A.L.R.2d 1204 and the various cases cited in the briefs submitted by the plaintiff and defendant. On seemingly almost identical facts courts have reached opposite conclusions in the various jurisdictions. As this is a case of first impression in North Carolina, this Court adopts the view of the court set forth in McCain v. Bankers Life & Casualty Co., 110 So.2d 718, 68 A.L.R. 2d 1194, 1199 (Fla.App.1959), which involved a small child who was a business invitee who walked into a glass panel which she believed opened into a patio. After indicating that as a rule a business invitee has the obligation to see what is there to be seen (i. e. the glass panel), the court continued (quoting Burdines, Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462, 463):

> "Circumstances alter the application of the rule to cases. What is reasonable care to one class of invitees might fall short as to another. Those who invite children, who have not arrived at the age of discretion, to go upon their premises are required to exercise a relatively higher degree of care for their safety than to adults. That degree of care is commensurate with the attending facts and circumstances of each case."

and quoting City of Jacksonville v. Stokes, 74 So.2d 278, 279 (Fla.1954):

> "It takes more indication of danger to alert a child than to alert an adult. 'Children are necessarily [more] lacking in the knowledge of physical causes and effects * * *. They must be expected to act upon childish instincts and impulses, and must be presumed to have less ability to take care of themselves than adults have.'"

What the court recognized in McCain v. Banker's Life & Casualty Co., supra, is that which is recognized by the Court in the instant case, that is, that to a child of tender years, a glass panel which gives a view of an outside area, whether that area be a patio or a courtyard, when such a panel extends almost entirely from the floor to the ceiling and is of the same level as the outside to a child unfamiliar

with such and when such contains no markings or decals, etc., thereon that the same constitutes a possible physical hazard to the child guest.

The defendant in its brief cited a number of cases which, while they bear on the present case, cannot be said to be controlling because of facts therein.

In Clardy v. Hudspeth, 89 Ark. 189, 115 S.W. 1134, 21 L.R.A.,N.S., 702 (1909); Rosenberg v. Hartman, 313 Mass. 54, 46 N.E.2d 406 (1943); Valunas v. J. J. Newberry Co., 336 Mass. 305, 145 N.E.2d 685 (1957), A. C. Burton Co. v. Stasny, 223 S.W.2d 310 (Tex.Civ.App. 1949) and Crawford v. Given Bros., 318 S.W.2d 123 (Tex.Civ.App.1958), cited by the defendant, the plaintiffs therein were injured as the result of walking into a glass door or adjoining glass panel upon leaving the business establishment after having entered the building by the same door or door adjoining the glass panel. In the instant case, Emily Waugh had never before entered a room in the defendant motel nor had used the east door adjoining the panel for that purpose.

In Rosenberg v. Hartman, supra; Acme Laundry Co. v. Ford, Tex.Civ.App., 284 S.W.2d 745 (1955); Snyder v. Ginn, 202 Va. 8, 116 S.E.2d 31 (1960); Brand v. Pope, 103 Ga.App. 489, 119 S.E.2d 723 (1961) wherein recovery was denied to the party who collided with the glass door or panel, the plaintiff was an adult. In A. C. Burton Co. v. Stasny, supra, the injured individual was sixteen years of age. A larger measue of care is owed to an infant invitee.

Clardy v. Hudspeth, supra; Cooper v. Scharf, 11 A.D.2d 101, 202 N.Y.S.2d 63 (1960); Pettigrew v. Nite-Cap, Inc., 63 So.2d 492 (Fla.1953), involved holdings that either the plaintiff was contributorily negligent or that the plaintiff's own negligence caused the injury. In the instant case, as will be indicated, infra, Emily Waugh could not be held to be contributorily negligent.

Bua v. Fernandez, 21 A.D.2d 887, 251 N.Y.S.2d 773 (1964) comp. dismissed 15 N.Y.2d 664, 255 N.Y.S.2d 877, 204 N.E.

207 (1964), was a social visitor to whom a lesser degree of care is required to be shown than to infant guests in an inn.

In the present case, there was a finding that prior to the injury complained of, individuals had collided with panels in various parts of the motel. Such prior accidents should have been indicative to the defendant that the conditions of transparency, light and shadow were such that others would be likely to collide therewith to their injury, unsuspecting the existence of such panels and as indicated in the *McCain* case, supra, that while adults can be expected to employ discretion and care to recognize and avoid the panels, such cannot reasonably be expected of a child of tender years coming upon a panel in the defendants' motel for the first time.

An innkeeper is required to give warning of such hidden perils. Barnes v. Hotel O. Henry Corp., 229 N.C. 730, 51 S.E.2d 180 (1949). His duty to give such warning is increased when infant guests are present. Baker et ux. v. Dallas Hotel Co., supra.

The defendant in his initial brief and its pleadings has raised the issue of contributory negligence. Emily Waugh was not seven years of age at the date of the accident and in this state it is conclusively presumed that a child under the age of seven years is incapable of contributory negligence. Walston v. Greene, 247 N.C. 693, 102 S.E.2d 124 (1958).

The defendant therefore by its failure to warn its infant guest of the hidden danger of the glass panel or to place thereon such markings as would indicate the presence of the glass to Emily Waugh or failed to construct guards around the panels was negligent and such negligence was the proximate cause of the injury complained thereof.

Emily Waugh is, therefore, entitled to recover as damages for her injuries in one compensation in a lump sum for all injuries past and prospective in consequence of the defendant's wrongful and negligent act and omissions. Hunter v. Fisher, 247 N.C. 226, 100 S.E.2d 321

(1957). After giving effect to this rule and carefully considering the nature and extent of the injuries resulting from the negligence of the defendant, it is found that she is entitled to recover the sum of $4,500.00.

In assessing the damages, consideration was not given to the medical and hospital expenses as such were not the subject of recovery in this action.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of the controversy.

2. The action as against the defendant, Duke Motor Lodge, Inc., is hereby dismissed.

3. The motion of the defendant, The Duke Corporation, to dismiss the plaintiff's action should be and is denied.

4. The plaintiff is entitled to recover from the defendant, The Duke Corporation, as damages the sum of $4,500.00, together with the costs herein expended.

Counsel for plaintiff will prepare and submit to the Court an appropriate judgment.