Maynard GAULT, Administrator of the Estate of Maynard Gault, Jr., a minor, Deceased, Plaintiff,

v.

Julian F. TABLADA et al., Defendants.

Civ. A. No. S74–42(N).

United States District Court, S. D. Mississippi, S. D.

July 24, 1975.

W. Joel Blass, Hollis C. Thompson, Jr., Gulfport, Miss., for plaintiff.

George E. Morse, Gulfport, Miss., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NIXON, District Judge.

The Plaintiff, Administrator of the estate of his minor deceased son, May-

nard Gault, Jr., filed this diversity suit against the defendants under the wrongful death statute of the State of Mississippi, Miss.Code 1972, § 11–7–13, seeking damages for himself, his wife, Jo Ann Gault, mother of the decedent, and Josanne Gault, Castle Ann Gault, John Gault, Marcy Ann Gault, and Gypsy Gault, Maynard Jr.'s surviving minor brothers and sisters. This case was tried to the Court without a jury, and based upon all of the evidence adduced at the trial, this Court makes the following Findings of Fact and reaches the following Conclusions of Law as required by Rule 52, F.R.Civ.P.

## FINDINGS OF FACT

The decedent's mother, Jo Ann Gault, was employed as a waitress in the restaurant at the defendants' motel (Moody's) by Mrs. Elizabeth Bond, its manager, who oversaw the entire operation of the defendants' motel, including the restaurant, lounge and motel itself, after having been recommended by Mrs. Gertrude Kimm, the assistant manager and supervisor of the morning shift, which included the restaurant operation, to whom Mrs. Gault had applied for a job.

Moody's consisted of seventy-three rental units, including nine apartments, and employed approximately sixty-five persons in its several departments at its rather extensive location on the north side of U. S. Highway 90 in Gulfport, Mississippi.

Pursuant to the suggestion of the defendants' management, Mr. and Mrs. Gault and their six children, including the deceased minor, moved into Apartment "A" at Moody's as paying guests where they resided until approximately one week subsequent to the drowning death of Maynard, Jr., paying a rental of $130.00 per month. Although Mrs. Gault was discharged as a waitress by Moody's on February 14, 1974, she, Mr. Gault and the children continued to reside as tenants in their apartment on the premises and were business invitees at the time that their six and one-half year old son drowned in the defendants' swimming pool which was provided for the use and enjoyment of all paying guests or business invitees. When they did vacate the premises of their own volition after Maynard, Jr. drowned, their rent was fully paid.

Maynard Gault, Jr., a twin brother of Marcy Ann, was six and one-half years of age at the time of his death on February 18, 1974, when he drowned in Moody's swimming pool at the motel late in the afternoon. Earlier that day he had accompanied his mother and his brother, John, to a nearby store to purchase groceries and to sell some bottles which the children had collected. While there, the two boys bought some bright colored balloons and after arriving back at their apartment went out to play while Mrs. Gault began preparing supper for the children and her husband, who usually arrived home at approximately 5:30 or 6:00 p. m. from his job as an "oiler" of heavy equipment used in mechanical construction at Litton Industries in Pascagoula, approximately thirty-five miles away. He regularly worked during the week and on holidays and overtime whenever such work was available.

When Mr. Gault arrived home on February 18, 1974 at approximately 5:30 p. m. he inquired of the whereabouts of John and Maynard, Jr. and was informed by Mrs. Gault that they were out playing. He sent one of his daughters to the pool area to look for them because that child had stated that they had been playing around the pool which was located on the defendants' premises a short distance south of their apartment. This child came back and informed the Gaults that Maynard, Jr. was "down in the pool", at which time Mr. and Mrs. Gault ran to the pool area and observed Maynard, Jr.'s body at the bottom of the pool in its deepest part. Mr. Gault dived into the pool and retrieved Maynard's body, handing it to Mrs. Gault who, together with another guest at the

motel, began administering artificial respiration and also attempted to utilize oxygen from a small tank which was owned by another guest. The child was rushed to Memorial Hospital in Gulfport where he was pronounced dead on arrival as a result of drowning.

Maynard, Jr. did not enjoy swimming and could not swim, although he could "dog paddle" a little. He, unlike some of the other Gault children, did not like the water but had played frequently in the swimming pool area, although he had been cautioned by both Mr. and Mrs. Gault about playing in that area. Samuel Wright, a former maintenance man for the defendants, testified that he had previously run the deceased child away from the pool area on one occasion as he had likewise done to many other small children practically every day that he worked at Moody's for a period of approximately one year prior to the time that Maynard, Jr. drowned. It was established that Moody's experienced considerable trouble with minor children playing in the pool area, particularly in the summertime when the pool was being utilized. The defendants' manager also had cautioned the deceased child to stay away from the pool area on other occasions, and she and Mrs. Kimm, the assistant manager, acknowledged that the Gault children frequently played in the area of the pool and the restaurant, which was located near the pool, and that they and other children frequently ran around the motel premises in the pool area which was easily accessible to children.

Mrs. Bond, the defendants' manager, acknowledged that she felt "someone was going to get hurt around the pool area, and that the minor Gault child did, i. e., he drowned."

Mr. Wright, the defendants' former maintenance man, frequently talked to and played with Maynard, Jr. and earlier on the afternoon that he drowned had been requested by the child to fill his last balloon with water but the laundry room was already closed for the day and this could not be done. When the child's body was found, his balloon was observed floating in the swimming pool.

On the date of the drowning the swimming pool was full of leaves and was very dirty. It had not been drained after the summer season, and in fact was not capable of being drained, according to Mrs. Bond. It was not covered, although Mrs. Bond admitted that she knew that it could have been, and there was no rope or any safety or lifesaving equipment at or near the pool and no life guard had at any time been assigned to duty at the swimming pool. There were no signs posted at or near the pool at the time that Maynard, Jr. drowned, and although Mrs. Bond testified that there was a sign posted during the summer which had been taken down for painting at the time of the Gault child's drowning, she did not relate what the sign stated nor was there any offer of the sign or any picture thereof. The former maintenance man testified that during the entire year that he had worked at Moody's prior to the time of this drowning that he had never seen any sign of any kind containing rules or regulations posted in the area of the swimming pool, and the Court finds that there was none. Although there was a four foot metal fence enclosing the entire pool there were approximately four openings for entrance to the pool through this fence with no gates thereon.

The evidence further disclosed that although Mrs. Gault was a very competent waitress, nevertheless she had a tendency to drink alcoholic beverages and that she and Mr. Gault had had a violent argument which involved some physical contact in the lounge at Moody's while she was off duty. On another occasion, when she was called to perform special work after her regular duty hours approximately two weeks prior to Maynard, Jr.'s drowning she was intoxicated, and spilled some food and was discharged. There was no evidence either that she had imbibed on or shortly be-

fore the date on which Maynard, Jr. drowned.

Despite the fact that Moody's management testified concerning the alleged trouble that they had with the Gault children, including the two year old baby, running unsupervised around the court and their consequent admonitions to Mrs. Gault, they at no time had ever requested the Gaults to vacate the premises or took any steps to discharge Mrs. Gault for that reason. Neither had they placed any gates around the pool area, covered the pool nor provided any other safety measures or equipment at or near the pool area despite their knowledge that many children, both guests and neighborhood children, frequented the pool area and had to be frequently run away, and were fully aware of the danger to these children because of the water-filled unprotected pool.

Mr. and Mrs. Gault were required to work in order to support themselves and their children, and employed a baby sitter to watch the six minor children during that period of time.

Maynard Gault, Jr. was a shy, introverted child who did not easily make friends. He and the other Gault children, with the exception of the two year old baby, were attending school, Maynard, Jr. being a first grade student who had been put into a "special education" class because his principal was of the opinion that he was "immature" and had a learning disability.

When his body was recovered from the swimming pool, he was fully clothed wearing long pants, a shirt, shoes and socks, which makes it rather doubtful that he was engaged in swimming at the time that he drowned, but in all probability was attempting to fill his balloon with water from the pool in view of the conversation which he had had with the maintenance man and the fact that his balloon was found partially filled with air and floating on the pool when his body was recovered from the bottom thereof.

Although Mr. and Mrs. Gault at times did not enjoy a harmonious marital relationship, they nevertheless loved and were concerned about their children, including Maynard, Jr., who was a rather affectionate child. This was evidenced by the testimony of the former maintenance man and Mrs. Kimm, whom Maynard, Jr. finally befriended in response to her friendly overtures toward him.

## CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and of the subject matter.

In this diversity case this Court is Erie bound to apply the substantive law of the State of Mississippi to the foregoing facts.

In *Mock v. Natchez Garden Club*, 230 Miss. 377, 92 So.2d 562 (1957), 8 A.L.R.2d 1315, the Mississippi Supreme Court held that the owner or operator of a bathing resort and swimming pool owed a duty to use ordinary or reasonable care for the safety of patrons or to guard against injury to them, and must exercise reasonable care and diligence to provide a reasonably safe place or accommodations and maintain the premises in a reasonably safe condition for their use. This duty varies according to the risk involved and the age of the invitees on the premises, and the defendants were bound to consider whether the pool area, although perhaps safe enough for adult guests, presented any reasonably avoidable dangers to children of tender age. *Mock v. Natchez Garden Club, supra* at 564. See also, *City of Jacksonville v. Stokes*, 74 So.2d 278 (Fla.1954). Thus, the known presence of Maynard, Jr. as well as various other children who were guests at the defendants' motel, imposed a duty of care upon the defendants commensurate with the facts and circumstances then existing. *Waugh v. Duke Corporation*, 248 F.Supp. 626 (M. D.N.C.1966). It was established without dispute that minor children were accustomed to playing around the pool premises and that the management and the employees of the motel were aware

of this and of the danger presented thereby, yet failed to take any reasonable steps or do anything to discharge their foregoing duties to protect them, including the plaintiff's decedent. See *Barlow v. Gurney*, 224 N.C. 223, 29 S.E. 2d 681 (1944).

In *City of Jacksonville v. Stokes, supra*, the Court in discussing the actions of minor children stated:

> "It takes more indication of danger to alert a child than to alert an adult. 'Children are necessarily lacking in the knowledge of physical causes and effects . . . . They must be expected to act upon childish instincts and impulses, and must be presumed to have less ability to take care of themselves than adults have.' "

In spite of the fact that many minor children stayed at the defendants' motel with their parents, including the Gault children, with the full knowledge and realization of the defendants through their management, that it was necessary to chase the children, including the minor plaintiff, away from the pool area on several occasions prior to the date that Maynard Gault, Jr. drowned, and that the defendants' manager was fully aware of the existence of danger presented to children playing in the pool area, nevertheless (1) no life guard was ever assigned to duty at the defendants' pool, even during the summertime or the swimming season when the pool was being fully utilized; (2) although a four foot high fence had been erected around the pool, there were four openings therein on which no gates had ever been hung or placed; (3) no cover had ever been placed over this pool at any time during the off-swimming season, including the period in question, to protect minor children who were playing near the pool from falling therein and drowning; and (4) there was no lifesaving equipment owned or utilized by the defendants or warning signs or instructions posted near the pool.

■ In view of the foregoing undisputed facts, this Court finds and is of the opinion that the defendants wholly failed to discharge their duty to use reasonable and ordinary care to provide protection for minor children playing at or near its swimming pool. They were therefore negligent and their negligence was the sole proximate cause of Maynard Gault, Jr.'s death by drowning.

■ As the defendants concede in their post-trial Proposed Findings of Fact and Conclusions of Law submitted to this Court, a minor child under the age of seven is not possessed with that discretion which would permit him to be charged with any contributory negligence. *Tidwell v. Ray*, 208 F.Supp. 952 (N.D.Miss.1962); *Morris v. Boleware*, 228 Miss. 139, 87 So.2d 246 (1956); *City of Pass Christian v. Fernandez*, 100 Miss. 76, 56 So. 329 (1910); Grant, Summary of Mississippi Law, § 866, pp. 534–35 (1969).

■ Neither can this Court say that under all the facts and circumstances of this case that the deceased's father or mother was guilty of any contributory negligence which proximately caused or contributed to cause the drowning death of their six and one-half year old minor child. See *Gordon v. Lee*, 208 Miss. 21, 43 So.2d 665 (1949); even if Mrs. Gault had been negligent and her negligence had proximately contributed to cause the death of Maynard, Jr. which this Court does not find, the other plaintiffs had a separate and independent right to unmitigated recovery of all damages incurred by them through the loss of a minor child. *Nosser v. Nosser*, 161 Miss. 636, 137 So. 491 (1931); *Wright v. Standard Oil Co., Inc.*, 470 F.2d 1280 (5th Cir. 1972), *cert. denied*, 412 U.S. 938, 93 S. Ct. 2772, 37 L.Ed.2d 398 (1973).

■ Plaintiffs are entitled to recover a judgment against the defendants for actual and compensatory damages for the loss of love, society and companionship of the minor child; for the net cash value of the loss of earnings and services of the deceased until he reached majority, who, according to the Commissioners 1958 Standard Ordinary Life

Expectancy Table, had an average life expectancy of 63.27 years at the time of his death, *Sandifer Oil Co. v. Dew*, 220 Miss. 609, 71 So.2d 752 (1954) ; and Mr. Gault, Administrator, is entitled to recover the amount of $750.00 for funeral expenses incurred to bury the deceased minor.

The plaintiffs are entitled to recover a judgment of and from the defendants in the full sum and amount of $75,000.00 actual and compensatory damages, together with all costs of this proceeding.

A final judgment conforming with the above Findings of Fact and Conclusions of Law, approved as to form by attorneys for both sides, shall be presented to this Court within the time and manner prescribed by the rules hereof.