No. 81-299

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

DENNIS L. JOHNSON, Guardian Ad Litem
for MARK L. JOHNSON, an infant,

Plaintiff and Appellant,

-vs-

YOUNG MEN'S CHRISITAN ASSOCIATION OF
GREAT FALLS,

Defendant and Respondent.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade, The Honorable
John M. McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

Howard F. Strause, Great Falls, Montana

For Respondent:

Smith, Baillie & Walsh, Great Falls, Montana

Submitted: September 20, 1982

Decided: October 6, 1982

Filed: OCT

_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff sued the Great Falls YMCA for negligence after his son Mark was found submerged in defendant's swimming pool. A jury returned a verdict for defendant, and plaintiff appeals. We affirm.

At the outset, we note that appellant's brief does not contain a separate statement of issues presented for review, as required by Rule 23(a)(2), M.R.App.Civ.P., which makes our ferreting out appellant's arguments a more difficult and time-consuming task. Counsel are admonished to conform their briefs to Rules 23 through 27, M.R.App.Civ.P.

In May 1977 Mark brought home from his school one of defendant's brochures. In this brochure was a description of the "Summer Action Club" which was advertised "safe, well-supervised and inexpensive." Upon payment of the required fee, Mark, age six, was enrolled in the Club and his particular class was to run from June 27, 1977, to July 1, 1977. A day's activities in the Club usually concluded with a "free swim" period in defendant's indoor pool, where there was no formal instruction but individual informal instruction was occasionally given. The shallow and deep parts of the pool were divided by a rope.

Pam Boyle, a certified senior lifeguard at the YMCA, gave Mark instructions on how to swim so that he was able to dog-paddle the width of the pool without assistance. On June 30, 1977, the Summer Action Club members had the usual "free swim" period at the end of the day. There were not more than twenty-five people in the pool at this time and attendant at the pool were five counselors, including Boyle and another senior lifeguard. All five were qualified in

-2-

lifesaving.

The facts surrounding Mark's submersion in the water are in dispute. Missy Blais, one of the junior counselors, stated by affidavit that she noticed Mark playing with two other boys and hanging onto the edge of the pool about two feet from the dividing rope, on the deep end side. A short time later she was summoned by one of the two boys who told her that they had been playing with Mark but he had not come up yet. However, there was other testimony indicating that Mark had been running and had fallen in. At any rate, Blais found Mark submerged in about four and one-half feet of water, six to eight inches from the bottom of the pool and drifting towards the middle of the pool.

Blais and a boy pulled Mark from under the water and yelled for help. What happened next is also in dispute. Blais claimed she carried Mark to the edge of the pool and that Mark was given no mouth-to-mouth resuscitation while in the water. Boyle, on the other hand, testified that she met Blais in the water carrying Mark, grabbed Mark by the hair and swam to the side of the pool. Boyle further testified that, while still in the water, she gave Mark two quick breaths of air, using artificial resuscitation, and Mark vomited. After clearing his mouth out, she gave him two more quick breaths, and he vomited again. Mark was then lifted out of the water where cardio-pulminary resuscitation was administered until ambulance personnel arrived. One of the ambulance personnel (Cherewatenko) testified that when he arrived Mark was unconscious but was breathing and had a weak pulse. Mark was then taken to the hospital where he stayed for four days, two of which were for observation

-3-

purposes.

On April 14, 1978, plaintiff filed a complaint alleging that defendant was negligent in the care and supervision of Mark. Defendant answered, denying the negligence allegations and generally contending that defendant had exercised ordinary care in supervising and assisting Mark when he became endangered.

The parties exchanged numerous interrogatories and submitted pretrial memoranda. Plaintiff's motion for summary judgment on the issue of liability was denied. At trial, one of the major issues was the length of time Mark was under water. The trial judge admitted, over plaintiff's objection, Boyle's testimony regarding an experiment performed by her thirty minutes after the incident. In this experiment, she threw a diving ring into the pool at the location where Mark was recovered and timed how long it took two young boys (one of whom had helped pull Mark from under the water) to retrieve it. Boyle concluded from this experiment that Mark was under water for about thirty seconds or at the maximum, one to one and one-half minutes. A ten-pound diving weight was also thrown in so that it settled near the drain in the pool, and the boys were unable to retrieve it. From this, Boyle concluded that Mark was not on the bottom of the pool when rescued.

During the trial, plaintiff called psychologists to testify that Mark had a learning disability proximately caused by the lack of oxygen during his submersion in the water. Defendant called the treating physician who testified that no brain damage had occurred. After receiving the judge's instructions, which included statements addressing

the proper standard of care, the jury returned a verdict for the defendant. Plaintiff's motion for a new trial was denied, and plaintiff appeals.

The following issues are raised on appeal:

1. Whether the District Court erroneously admitted the testimony regarding the diving ring experiment;

2. Whether plaintiff is entitled to a new trial because of newly discovered evidence or because of defendant's abuse of pretrial discovery;

3. Whether the District Court erroneously instructed the jury on the proper standard of care; and

4. Whether the District Court erred in failing to grant plaintiff's motion for summary judgment on the issue of liability.

Initially, appellant argues that Boyle's testimony regarding the diving ring experiment was improperly admitted because the test was not conducted under "substantially similar" conditions. Appellant further argues that Boyle was not qualified as an expert to compare the differences between how a human body would react in water as opposed to the diving ring.

Respondent counters that a sufficient foundation was laid and relies on Hurly v. Star Transfer Company (1962), 141 Mont. 176, 376 P.2d 504. In Hurly, we stated that the trial court has discretion on whether to admit evidence of an experiment and substantial similarity of conditions between the experiment and the actual incident is all that is necessary.

The testimony regarding the diving ring experiment was properly admitted. This evidence supported the conclusion

-5-

that it took one to one and one-half minutes to retrieve the victim from the pool. Thus, no brain damage could have occurred in view of one doctor's expert testimony that for brain damage to occur the victim must be deprived of oxygen for three to four minutes. Moreover, another doctor testified that lack of oxygen for five minutes is required before brain damage occurs.

Also, the circumstances of the experiment here were substantially similar so as to allow the admission of Boyle's testimony. The experiment was conducted thirty minutes after the incident and involved the same boy who had helped pull Mark out of the water. Although it is obvious that a diving ring or diving weight has different dimensions than a small boy's body, this evidence was probative to provide the fact finder with an indication of the time involved in effecting the rescue. The trial judge did not abuse his discretion in allowing evidence of the experiment. Hurly, supra. See also, Hanson v. Howard O. Miller, Inc. (1969), 93 Idaho 314, 460 P.2d 739 (admission of a braking experiment of a different kind of car than that involved in the accident was left to the sound discretion of the trial court).

Appellant next argues that he is entitled to a new trial because of newly discovered evidence and defendant's pretrial discovery abuses. Regarding the pretrial discovery abuse, appellant argues that defendant was allowed to add four new witnesses the day before the trial, including Boyle. According to appellant, defense counsel knew of Boyle's whereabouts (from an undated letter received by defendant describing the incident) but failed to inform

plaintiff of her address in violation of defendant's duty to supplement its interrogatory answers.

Respondent admits that it did not provide Boyle's Nebraska address to plaintiff but contends that it would have been a useless act because the address was outdated and would not have led to contact with Boyle anyway. Respondent argues that it had received a phone call that Boyle had come to Great Falls on her own during her 1980 Christmas vacation (the trial started January 7, 1981) and this was the first time that defendant knew of Boyle's whereabouts. Respondent also claims that appellant abused the discovery process because ambulance employee Cherewatenko was never identified in interrogatory answers as being an expert, was never identified in appellant's pretrial memorandum as being a witness, and Cherewatenko would not discuss the case with defense counsel. Cherewatenko later testified as an expert in the case.

Neither counsel's action in this regard is commendable as both were lax in keeping the other party informed of pretrial developments and in supplementing answers to interrogatories. The District Court did not commit reversible error by allowing Boyle to testify. Appellant strenuously objected to her testimony because she was going to testify that Mark could swim whereas appellant had previously been under the impression that he could not. However, Boyle was intimately involved in the incident. Her testimony was probative of the matter surrounding the resuscitation of Mark and the amount of time that he was deprived of oxygen.

Moreover, plaintiff interviewed Boyle prior to trial and rejected offers of a continuance by defendant and the

trial judge. Under the circumstances here, plaintiff should have requested a continuance, Kipp v. Wong (1974), 163 Mont. 476, 517 P.2d 879, and Hill v. McKay (1908), 36 Mont. 440, 93 P. 345. Plaintiff argued against such continuance, submitted his case to the jury and, after an adverse jury verdict, seeks a new trial. Plaintiff is not entitled to have his cake and eat it too.

Appellant also argues for a new trial on the ground of newly discovered evidence, i.e., Missy Blais was located in Portland, Oregon, after the trial and an affidavit obtained from her differed in several aspects from Boyle's testimony. Although a counteraffidavit of Blais (submitted by defense counsel to correct some of the statements in Blais's original affidavit) was filed, it still appears that Blais did not remember handing Mark to Boyle or Boyle giving Mark mouth-to-mouth resuscitation in the pool.

The statute describing grounds for a new trial states in pertinent part:

> "Grounds for new trial. The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> ". . .
>
> "(4) newly discovered evidence material for the party making the application which he could not, with reasonable diligence, have discovered and produced at the trial; . . ." Section 25-11-102, MCA.

The statute requires that newly discovered evidence could not have been discovered with reasonable diligence. In his brief, plaintiff does not deny that one of plaintiff's witnesses, Lisa Galligos (who was called at trial by plain-

tiff and was listed as one of the plaintiff's witnesses on both pretrial orders) knew where Blais was all along. A simple inquiry by plaintiff of one of its own witnesses would have been sufficient. Further, in one of defendant's answers to plaintiff's interrogatories, Blais was described as having pulled Mark from under the water and having taken him to the edge of the pool. This established Blais as a crucial witness. Had plaintiff interrogated his witnesses more thoroughly prior to trial and during preparation of his case, he would have discovered the whereabouts of Blais.

Appellant next argues that the District Court erroneously instructed the jury on the proper standard of care by refusing to give three proposed instructions, which specifically stated that a greater degree of care is owed to a child than to an adult. The court sustained objections to these instructions on the grounds that they did not state the law in Montana as reflected in Henroid v. Gregson Hot Springs (1916), 52 Mont. 447, 158 P. 824. The court instead gave appellant's Instruction No. 22, which read:

> "When a person undertakes the control of supervision of a child, he has the duty to use reasonable care to protect the child from injury. Although such person is not an insurer of the safety of the child, he is required to use reasonable care commensurate with the reasonable foreseeable risk of harm to which the child might be subjected while under his control and supervision."

Henroid appears to be the sole Montana case discussing a swimming pool operator's standard of care owed to a child. In Henroid a thirteen-year-old boy who apparently could swim (although plaintiff alleged otherwise) drowned in defendant's pool. In affirming the trial court's granting of a nonsuit, this Court said:

-9-

"Plaintiff must have had some purpose, however, in alleging that Leo Henroid could not swim and in attempting to prove the fact, and that this fact was known to defendant. It must have been the purpose of this allegation to fix the measure of defendant's duty in this particular instance. That duty is to be measured by the standard of ordinary care (Phillips v. Butte, etc., Fair Ass'n, 46 Mont. 338, 127 Pac. 1011, 42 L.R.A. [N.S.] 1076), and ordinary care is care proportionate to the risk to be apprehended and guarded against (Bourke v. Butte, E. & P. Co., 33 Mont. 267, 83 Pac. 470). . .

"Other things being equal, the defendant would owe a higher degree of care to the boy whom it knew could not swim, and who was permitted in the pool, than to one whom it knew could swim. In other words, the ability to swim or the lack of it would be an important factor in the sum of all the circumstances which determine what is and what is not ordinary care." (Emphasis added.) 52 Mont. at 455-456, 158 P. at 825.

This statement in Henroid appears to be in keeping with other pronouncements on the subject. In Gault v. Tablada (S.D. Miss. 1975), 400 F.Supp. 136, aff'd, 526 F.2d 1405, a six-and-one-half-year-old boy (approximately the same age as Mark here), who could dog paddle a little but could not swim, drowned in defendant's motel pool. In discussing the standard of care owed to the boy in Mississippi, the court stated:

"In Mock v. Natchez Garden Club, 230 Miss. 377, 92 So.2d 562 (1957), 8 A.L.R.2d 1315, the Mississippi Supreme Court held that the owner or operator of a bathing resort and swimming pool owed a duty to use ordinary or reasonable care for the safety of patrons or to guard against injury to them, and must exercise reasonable care and diligence to provide a reasonably safe place or accommodations and maintain the premises in a reasonably safe condition for their use. This duty varies according to the risk involved and the age of the invitees on the premises, and the defendants were bound to consider whether the pool area, although perhaps

-10-

> safe enough for adult guests, presented any reasonably avoidable dangers to children of tender age. Mock v. Natchez Garden Club, supra at 564. See also, City of Jacksonville v. Stokes, 74 So.2d 278 (Fla. 1954). Thus, the known presence of [decedent], as well as various other children who were guests at the defendants' motel, imposed a duty of care upon the defendants commensurate with the facts and circumstances then existing. Waugh v. Duke Corporation, 248 F.Supp. 626 (M.D. N.C. 1966) . . ." (Emphasis added.) 400 F.Supp. at 139.

The court also noted that in Mississippi, as in Montana, a child under seven cannot be contributorily negligent, 400 F.Supp. at 140. See, Burns v. Eminger (1927), 81 Mont. 79, 261 P. 613, and Graham v. Rolandson (1967), 150 Mont. 270, 435 P.2d 263.

In Bailey v. YMCA (1965), 112 Ga.App. 684, 146 S.E.2d 324, a nine-year-old boy who could not swim drowned in defendant's swimming pool, and there, as here, no one saw the boy go under the water or knew exactly how he had entered the water. In affirming the jury verdict for defendant and denying plaintiff's motion for a new trial, the court said:

> ". . . children of tender age . . . may be entitled to a greater degree of care from adults toward them, proportioned to their ability to foresee and avoid perils which may be encountered; but regardless of the age or capacity of the injured person, if there is no breach of legal duty on the part of the defendant toward that person, there can be no legal liability. Augusta Amusements, Inc. v. Powell, 93 Ga.App. 752, 754, 92 S.E.2d 720." (Emphasis added.) 146 S.E.2d at 337.

The jury was properly charged in the instant case by appellant's Instruction No. 22. Although it does not specifically state that a greater duty is owed, it expresses the idea that the reasonable care to be accorded the plaintiff

-11-

by defendant must be commensurate to the foreseeable risk of harm, i.e., the child's age and maturity are factors to be taken into account in determining what risks are reasonably foreseeable. Henroid, Gault and Bailey, supra, all bear this out.

Moreover, plaintiff's counsel fully argued to the jury the proper standard of care and pointed out the particulars of the alleged negligence of Boyle and the defendant. Plaintiff's substantial rights were not prejudiced by the failure to give the requested instructions. Associated Agency of Bozeman, Inc. v. Pasha (1981), ___ Mont. ____, 625 P.2d 38, 38 St.Rep. 344.

Lastly, appellant argues that the District Court erred in failing to grant plaintiff's motion for summary judgment on the liability issue, relying principally on the cases cited as authority in his rejected jury instructions. We do not agree. There were a number of genuine issues of material fact presented by defendant, thereby precluding plaintiff's motion for summary judgment on the issue of liability. Rule 56(c), M.R.Civ.P. For example, there was a factual question of whether defendant had provided a sufficient ratio of lifeguards to pool users according to water safety procedure. There was also a factual question, raised by the complaint and an expert's affidavit, as to how long Mark was under water which, of course, is the nub of plaintiff's case. Furthermore, there was a factual question of whether defendant had properly instructed its patrons in pool use in accordance with accepted water safety standards. By virtue of these and other factual questions, we hold that the District Court did not err in failing to grant plaintiff's

motion for summary judgment on the liability issue.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

-13-

Mr. Justice John C. Sheehy, dissenting:

The first ground upon which I would reverse and grant a new trial of this cause is the impropriety of admitting evidence of the experiment by Pam Boyle, and her opinion based upon that experiment as to the length of time that Mark Johnson was under water, deprived of oxygen.

Pam Boyle's testimony of the near drowning incident begins with herself being in the pool hanging onto the edge, approximately half way between the two ends on the side of the pool away from the boys' locker room. While she was there a young boy swam up to her and informed her that a boy had drowned. She then saw Missy Blais and another boy bringing Mark Johnson from the water somewhere in the middle of the pool. She went to them, took Mark Johnson from Missy Blais, and immediately started to administer mouth-to-mouth resuscitation. She stated, probably truthfully, that she had saved Mark Johnson's life.

After the incident, Pam staged a series of races among several boys involving a rubber ring and a ten-pound weight for the purpose of determining how long Mark Johnson was under the water. According to her testimony, these tests demonstrated that Mark was under water only thirty seconds. She was allowed to testify to that conclusion as a fact.

Based on her observation, her opinion as to the result of the experiment, limiting Mark's underwater experience to thirty seconds, was clearly irrelevant. She did not establish, and no other witness established, how long Mark Johnson had been under the water before he was discovered and brought to the surface by Ms. Blais and the boy. At the most the races or games, conducted after the incident, only

showed how long it would take boys, diving and swimming, to retrieve a rubber ring or a diving bell from under the water. As a matter of fact, the boys were unable to retrieve the diving bell.

It was, of course, impossible to establish that Pam Boyle was an expert as to how long Mark was under the water prior to being brought to the surface. It takes actual observation, not expertise, to establish such a fact. She did not have the actual observation.

The rule applicable to the admissibility of the opinion of an expert witness in Montana, until now, has been that if his opinion is unsupported by the details of his measurements or observations, both as to the data upon which they are based and the manner of reaching the result, his opinion is not competent or relevant. When he gives the details it is a question of law whether his method was correct, and a question of fact as to whether his result was correct. Irion v. Hyde (1940), 110 Mont. 570, 105 P.2d 666. The rule in Irion applies with special force in this case:

> "A witness, of special knowledge or skill on a subject outside of the ordinary realm of human experience, may be permitted to state his inference, from facts observed by him, as to matters connected with his specialty, not only because of the frequent difficulty of communicating the facts to the jury but also because, even if the facts could be fully laid before them, they would not possess the special knowledge or training necessary to coordinate and weigh the facts so as to draw the correct and proper inference therefrom. Such a witness is frequently termed an expert, but this is inaccurate, for the skilled witness testifies to the result of his own observation, and occupies the same position as any other witness except that within certain lines he possesses a superior knowledge which enables him to understand, as one without such special knowledge could not, what he

-15-

has observed, although he may also be competent to testify as an expert upon hypothetically stated facts. . .

". . .

". . . the judgment of an expert, when opposed to undisputed facts and the dictates of common sense, will not support a verdict, and the court should not permit the jury to be influenced by evidence on which they could not, within the laws of correct reasoning, make the finding. . .

". . .

"The reasons for rejecting a conclusion become stronger where it is apparent that it cannot reasonably be reached on the facts which are claimed to support it, where such facts are themselves the result of inference, or where the conclusion is not a necessary one. . ." 110 Mont. at 577-578, 105 P.2d at 671. (Emphasis added; citations omitted.)

The evidence of this professed expert, not being based upon her knowledge, observation, or an inference of fact reasonably derived from other facts, was compounded when her opinion as to length of time that Mark Johnson was under water was used as a basis by defense medical witnesses to testify that he could not have suffered oxygen deprivation. Her opinion flies in the face of her observed condition of the boy following his rescue, that his lips were blue, and of an independent witness, who observed that the boy's face was blue. In fact, in a later-discovered letter that Pam Boyle herself had written to defense counsel, she stated, "Mark's face was very blue and I got no response after slapping his face."

The staged races among the boys could never be a basis for her opinion as to how long Mark was under water when no observation existed to support the conclusion given.

Secondly, this case should be reversed because of the

failure by defense to comply with pretrial discovery rules.

On the day before the trial, counsel for defense moved the court to add four witnesses to the list of proposed witnesses in the trial. One of these names, Pam Boyle, turned out to be a critical witness in the cause. The other three witnesses had not been identified to plaintiff's counsel in any pretrial discovery beforehand, although seasonably plaintiff had requested in interrogatories the names and addresses of all witnesses having any knowledge of the pertinent facts of the incident.

The situation with Pam Boyle is particularly disturbing. Her address given by the defense in their response to the interrogatories was her parent's home, but in fact this was not her true address. It was discovered at the time of the motion for new trial, when the defense was required by the court to "cough-up" a letter it had received from Pam Boyle before the trial, that defense counsel did in fact have her address, and that she was residing in Omaha, Nebraska. Miss Boyle wrote a letter to the law firm, in which she stated some facts that are certainly now at variance with what she testified at the trial. In her letter she states:

> ". . . I was somewhere in the shallow end when Mark requested permission to go to the bathroom. Permission was given.
>
> "A short time later (I have no idea of the exact time) Joey and another boy were shouting at me across the pool and Missy, a junior counselor, brought Mark to me. I was by the side, somewhere between the three and five foot mark on the right side of the pool.
>
> "Mark's face was very blue and I got no response after slapping his face. . ."

It will be seen from the contents of her letter to

counsel, apparently some period of time before the trial, that Pam Boyle had no basis upon which she could estimate the period of time that Mark Johnson had been under water. Because of the failure of defense counsel, whether purposely or inadvertently is unimportant, to divulge the true address in response to the interrogatories of Pam Boyle, plaintiff was deprived of this most important information.

Plaintiff, immediately before trial, made a motion in limine that Pam Boyle and the other three witnesses not be allowed to testify because of the failure of defense counsel to abide by the pretrial discovery rules. The court refused that motion, and offered instead to allow interviews of the witnesses on the day of the trial, and offered to continue the cause if necessary. The offer to continue the cause was declined several times by plaintiff's counsel, they relying on their belief that under Montana law, the testimony of the witnesses should not be allowed at all because of the failure of defense counsel to provide the pertinent information in accordance with pretrial discovery rules.

The Montana Rules of Civil Procedure provide a positive duty on the part of the party responding to interrogatories to supplement the same to include information thereafter acquired. Rule 26(e)(2), M.R.Civ.P., provides:

> "A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." (Emphasis added.)

At the time of the receipt by defense counsel of the letter from Pam Boyle, mailed from Omaha, Nebraska, the

defense counsel knew that the response that they had made respecting her address was incorrect. Under the language of our Rule 26, whether their failure to disclose the correct address was purposeful or inadvertent, the legal effect is that it is a "knowing concealment." The same rule applies to the witnesses which were not divulged until the day before trial, other than Pam Boyle.

In Sanders v. Mount Haggin Livestock Company (1972), 160 Mont. 73, 500 P.2d 397 (Haswell, J., and Daly, J., dissenting), this Court, on nearly the same details, held it reversible error for a trial court to allow witnesses to testify whose location had not been made known to the other party:

> "This situation justified and required the exclusion of the witnesses' testimony. A motion to exclude and disallow any testimony of these witnesses was made, supported, and elaborated upon with a complete statement of the surrounding facts. The trial court was in error to refuse this sanction for failure to make proper and accurate responses to interrogatories that were designed to elicit exactly the information which was withheld." 160 Mont. at 82, 500 P.2d at 402.

It is not an answer to this issue that plaintiff's counsel themselves never identified in interrogatory answers an expert, Vern Cherewatenko, as being an expert or a witness. Two wrongs do not make a right, and we are not here considering whether prejudice resulted to the defense from the failure to divulge information about Cherewatenko. The issues should easily have been resolved at the District Court level by an evenhanded ruling from the District Court that the undisclosed witnesses presented by either party would not be allowed to testify when the pretrial discovery process was abused.

It is my belief, since I subscribe to full disclosure of law and facts at all stages of the trial, that the purpose of the Rules of Civil Procedure is best served when lawyers are fully candid with fellow lawyers and the courts. By insisting on the integrity of discovery under the rules, we open up the facts, encourage settlements, and avoid protracted litigation. These were the promises held out by members of this Court when they came to the legislature in 1963 to get authority to adopt the federal rules of procedure for Montana. Since Sanders v. Mount Haggin, supra, this Court has shown some spine in insisting on the integrity of the discovery process. Owen v. F. A. Buttrey Co. (1981), ___ Mont. ___, 627 P.2d 1233, 38 St.Rep. 714; Swenson v. Buffalo Building Co. (1981), ___ Mont. ___, 635 P.2d 978, 38 St.Rep. 1588; Kuiper v. District Court (1981) ___ Mont. ___, 632 P.2d 694, 38 St.Rep. 1288. There is no reason to step back now from requiring forthright candor in the discovery process.

_____
Justice

Mr. Justice Frank B. Morrison, Jr.:

I concur in the foregoing dissent of Mr. Justice Sheehy.

_____
Justice

-20-