JUSTICE LEAPHART,
dissenting.
¶60 I dissent. The Court’s ruling upholding summary judgment due to lack of direct evidence of causation allows Custer’s Inn to take advantage of the very situation it created; that is, allowing Custer’s Inn, through its own noncompliance with safety regulations, to evade trial on the merits.

The District Court’s Analysis:

¶61 The Estate originally moved for partial summary judgment on liability contending that a pool open to the public may be a nuisance if certain public safety requirements are not met. In particular, the Estate contended that Custer’s Inn was in violation of § 50-53-107(1), MCA (when lifeguard not required) and, among others, the following administrative regulations:
Rule 16.10.1524(3), ARM (no certified CPR personnel);
Rule 16.10.1525(7), ARM (guard lines separating shallow and deep end of pool);
Rule 16.10.1530(3), ARM (emergency telephone with posted instructions for emergency calls);
Rule 16.10.1506(3)(f), ARM (depth markings on side and top deck of pool).
¶62 In December of 1998, the District Court denied the Estate’s motion stating: “In the Court’s opinion this case abounds with questions *32 of material fact and therefore denies this motion for partial summary judgment.”
¶63 Then, in a subsequent decision in May of 1999, the court characterized its previous December, 1998 ruling as having been premised upon the Estate’s representation that it would produce an expert witness who would testify that if Custer’s Inn had a CPR trained person on staff, Mark Schwabe would not have drowned. Some six months later, when it became apparent that the Estate could not produce such an expert the District Court reconsidered its prior ruling, stating:
Now however, the Court has discovered that the Plaintiff has no expert who can testify with a reasonable degree of medical certainty that if the Defendants had had CPR-trained staff on duty that Mark Schwabe would have survived. The Defendants have filed with the Court the Affidavit of Thomas L. Bennett, M.D., whose unrebutted opinion is that, at the time Mr. Schwabe was removed from the pool, he was beyond resuscitation ....
The Court concludes that there are no facts in the record upon which an expert could rely in concluding that any violation or combination of violations of the Montana Health and Safety Rules caused Mark Schwabe’s death. Any opinions that are made in this regard are speculative, which is not surprising given the lack of evidence in this case as to how Mark Schwabe drowned.
¶64 It is thus apparent that the District Court reconsidered the summary judgment issue due to the Estate’s inability to produce an expert who would say that, but for Custer’s Inn’s failure to have CPR-trained staff, Mark would not have drowned. Although that inability certainly bears on the question of whether the Estate could prove that violation of Rule 16.10.1524(3), ARM (certified CPR personnel) caused Mark’s death, it does not in any way detract from the Estate’s allegations that the failure to have adequate depth markings or a safety line were causative factors in his death. The District Court had previously held that the case “abounds with questions of material fact.” The inability to produce a medical expert on resuscitation only defused one of the numerous allegations of safety deficiencies. As to the other alleged deficiencies, which are preventative in nature (no depth markings, no safety line), serious questions of material fact remained and summary judgment was inappropriate.

This Court’s Analysis:

*33 ¶65 The Court rejects a res ipse type analysis as being far too tenuous to establish causation as required in Busta v. Columbus Hosp. (1996), 276 Mont. 342, 371, 916 P.2d 122, 139. The Court cites to a Georgia decision from the Court of Appeals, Div. 2, for the proposition that “drowning is not an occurrence that is within itself sufficient to indicate that it must have been brought about by negligence on the part of someone. It is just as likely to happen as the result of accident, which is negligence of no one.” See Y.M.C.A. v. Bailey (Ga. App. 1965), 146 S.E.2d 324, 333 (cited with approval by the Montana Supreme Court in Johnson v. Young Men’s Christian Ass’n of Great Falls (1982), 201 Mont. 36, 46, 651 P.2d 1245, 1251).
¶66 I do not find either the Bailey case or the Johnson case to be persuasive in the present context.
¶67 The Johnson case involved a defense verdict in Johnson’s suit against the Y.M.C.A. of Great Falls (the “Y”) for negligence in the care and supervision of his son, Mark, who was found submerged in the “Y” pool during a “free swim” period. Johnson appealed challenging various evidentiary issues and a jury instruction on the standard of care. Johnson also argued that the district court erred in failing to grant his motion for summary judgment on the issue of liability. This Court affirmed on all issues. Johnson, 201 Mont. at 47, 651 P.2d at 1251. It is noteworthy that in affirming the denial of summary judgment we recognized that the genuine issues of material fact as to the alleged safety violations precluded summary judgment. In particular, there' were fact issues as to whether the “Y” had provided a sufficient ratio of lifeguards to pool users according to water safety procedure and a factual question of whether the “Y” had properly instructed its patrons in pool use in accordance with accepted water safety standards. Johnson, 201 Mont. at 47, 651 P.2d at 1251. Similarly, in the present case there were fact questions as to whether the Custer’s Inn pool was deficient due to lack of depth markings and a safety line between the shallow and deep water. The District Court here, like the district court in Johnson, should have denied the summary judgment and allowed the trier of fact to determine whether the safety violations caused the drowning.
¶68 In Bailey, the Court noted that “the pool was clearly marked as to depth from the shallow end to the deep portion at the opposite end. There was nothing to indicate that it was defective in any respect or that it contained hidden mantraps or concealed dangers.” Bailey, 146 S.E.2d at 332. Thus the Bailey case where there were no deficiencies, *34 is in sharp contrast to the present case where, two weeks after the drowning, Jerry Cormier of the Montana Department of Health and Environmental Sciences inspected the Custer’s Inn pool and found that there were no safety line partitions or backboards present and that the depth markings were inadequate. Furthermore, the pool has a hopper configuration on the bottom with a break at the five-foot depth where it drops sharply to nine feet. Cormier testified that this design is hazardous since a swimmer who gets in trouble and tries to bounce off the bottom of the pool to reach safety actually ends up getting fed into the deeper water. Cormier, in his deposition, concluded that “the combination of inadequacies, as noted in [my] reports and earlier testimony, was a significant contributing factor to the drowning death of Mark Schwabe on April 14, 1994.”
¶69 While the Georgia court may have been correct in stating that a drowning is not an occurrence that is “within itself sufficient” to indicate that it must have been brought about by the negligence on the part of someone, a drowning which occurs in a hopper-shaped pool with no safety line partition between the deep and shallow end and no adequate depth markings, is an entirely different matter. Unlike the CPR regulation which is remedial in nature, these safety precautions are preventative in that they are designed to afford swimmers the ability to appreciate the change in depth and the means to either avoid the deep water or pull oneself free of the deep water with a safety line. Since the regulations do not require that the pool be monitored by a remote camera, these preventative safety measures are all the more vital to the safety of a lone swimmer.
¶70 Having invited Mark Schwabe to swim in its unattended defective pool, Custer’s Inn should not be allowed to bootstrap its way into a summary judgment by arguing that, since no one else was present, the Estate is left with no direct proof as to how Mark drowned and thus its case must be dismissed. As the District Court initially recognized, this case “abounds with questions of material fact.”
¶71 Finally, I turn to the requirements of § 50-53-107, MCA, which provide:
(1) Public swimming pools and public bathing places, including pool structures, methods of operation, source of water supply, methods of water purification, lifesaving apparatus, safety measures for bathers, and personal cleanliness measures for bathers, shall be sanitary, healthful, and safe.
*35 (2) A lifeguard is not required for a privately owned public swimming pool if:
(a) a sign is prominently displayed on the swimming pool premises with the words “No lifeguard is on duty” or words of substantially the same meaning; and
(b) one individual per shift is on the premises, accessible to the pool, and currently certified as competent in cardiopulmonary resuscitation by either the American red cross or the American heart association.
¶72 The undisputed facts are that although Custer’s Inn did have a “No Lifeguard on Duty” sign as required by subsection (a), it did not have a CPR-trained person on staff and accessible to the pool as required by (b). Thus, under the clear dictate of the statute, Custer’s Inn was required to have a lifeguard on duty. The Court dismisses this point in a footnote stating that the Estate did not argue on appeal that there was a statutory duty to provide a lifeguard. The Estate did however raise the statute in its complaint, in its motion for summary judgment and, on appeal, cited the statute and argued that it is a criminal violation to operate a swimming pool in violation of the statute.
¶73 The statute requires that there be a lifeguard unless (a) there is a “No Lifeguard on Duty” sign and (b) there is CPR-trained person on the staff. In arguing that, in violation of the statute, there was no CPR-trained staff accessible to the pool, the Estate, by necessary implication argued that a lifeguard was required. If one argues, as the Estate did, that the provisions of § 50-53-107, MCA, have been violated, the only logical conclusion that can be drawn from that argument is that the entity in question failed to have either a sign and/or a CPR-trained person and had no lifeguard on duty. In other words, failure to have CPR-trained staff in itself does not constitute a violation. In addition to not having CPR-trained staff accessible, you must also fail to have a lifeguard on duty. The violation is the failure to provide the lifeguard. Obviously if there had been a lifeguard on duty, as required by law, the lifeguard would have been present to either prevent Mark from getting into distress or to render CPR assistance in a timely fashion.
¶74 Consistently with the Johnson case, I would hold that there are genuine issues of fact as to the cause of this drowning and that the District Court erred in granting summary judgment.
*36 .JUSTICE TRIEWEILER and JUSTICE HUNT join in the foregoing dissenting opinion.